EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| United Surety & Indemnity Company<br><br>    Demandante-Recurrida<br><br>              v.<br><br> Bayamón Steel Processors, Inc., et al.<br><br>    Codemandados-Recurridos<br><br> Marino A. Villa, et al.<br><br>    Codemandados-Peticionarios | Certiorari<br><br>2004 TSPR 56<br><br>161 DPR \_\_\_\_ |

Número del Caso: CC-2001-23

Fecha: 13 de abril de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional I

Juez Ponente:

Hon. José M. Aponte Jiménez

Abogado de la Parte Peticionaria:

Lcdo. Freddie Berríos Pérez

Abogados de la Parte Recurida:

Lcdo. Héctor Saldaña Egozcue
Lcda. Camille Jové Matos

Materia: Cobro de Dinero y Fraude de Acreedores

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

United Surety & Indemnity
Company
    Demandante-recurrida

      vs.                     CC-2001-23     CERTIORARI

Bayamón Steel Processors,
Inc., et al.
    Codemandados-recurridos

Marino A. Villa, et al.
    Codemandados-peticionarios

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 13 de abril de 2004

El 19 de octubre de 1994 Bayamón Steel Processors, Inc. instó una demanda en cobro de dinero contra Barrio Obrero Steel Yard, Inc. (BOSY) ante el Tribunal de Primera Instancia, Sala Superior de San Juan. En la misma reclamó el pago de $154,806.20 por concepto de mercancías vendidas, intereses, costas y honorarios de abogado. Además, solicitó una orden para el embargo preventivo de bienes de BOSY hasta la suma de doscientos mil dólares a los fines de asegurar la efectividad de la sentencia que, en su día, pudiese obtener a su favor. Asimismo, sometió una fianza, emitida por

United Surety & Indemnity Co., por la suma de trescientos mil dólares para responder por los daños y perjuicios que pudieran causarse como consecuencia del embargo.

El tribunal de instancia expidió la orden solicitada por Bayamón Steel, la cual fue diligenciada el 21 de octubre de 1994. A esos efectos, fueron embargadas unas cuentas por cobrar, que ascendían a $26,772.00, y una cuenta bancaria, la cual tenía un balance de $5,585.85, pertenecientes las mismas a BOSY.

A sólo cuatro días de diligenciado el embargo, el 25 de octubre de 1994, la demandante Bayamón Steel presentó ante el foro de instancia una demanda enmendada. En la misma incluyó una nueva causa de acción por fraude de acreedores y acumuló a Marino A. Villa y a Javier A. Villa, como demandados adicionales.[1] Además, solicitó del tribunal de instancia la expedición de una orden de prohibición de enajenar contra BOSY y la entrega de unos activos que ésta alegadamente había ocultado. Sin previa celebración de una vista, ni la prestación de fianza, el tribunal de instancia emitió la orden solicitada. En ésta se le ordenó a BOSY, y a los codemandados Villa, que pusieran todos sus bienes muebles bajo el control del tribunal, así como también copia de los títulos sobre

---

[1] Es menester señalar que en la referida demanda enmendada se acumularon, además, a las esposas de los codemandados y a las sociedades legales de bienes gananciales por ellos compuestas. Ambos codemandados eran accionistas de BOSY.

bienes inmuebles propiedad de BOSY, ello bajo apercibimiento de desacato.

La referida orden fue diligenciada el 31 de octubre de 1994.[2] Tres (3) días después, el 3 de noviembre de 1994, BOSY se acogió al Capítulo 7 de la Ley de Quiebras Federal. La Corte de Quiebras de los Estados Unidos para el Distrito de Puerto Rico ordenó la paralización del procedimiento judicial en contra de BOSY; ello no obstante, el procedimiento prosiguió en contra de los codemandados Villa ante el tribunal de instancia.

Así las cosas, los nuevos demandados contestaron la demanda enmendada negando los hechos medulares de la misma. Éstos, además, reconvinieron contra Bayamón Steel, aduciendo que se habían visto obligados a retirar su corporación de la industria de compra y venta de artículos de hierro y/o acero, además de tener que someter sus activos al procedimiento de liquidación bajo el Capítulo 7 de la Ley de Quiebras Federal, por motivo de las órdenes de embargo y prohibición de enajenar expedidas por el tribunal; en vista a ello, reclamaron daños alegando que no habían podido realizar negocios con dicha empresa, lo cual, según arguyen, hubiera maximizado el valor económico

---

[2] El alguacil que realizó dicho diligenciamiento sólo notificó a BOSY por conducto de su presidente, Javier A. Villa.

del haber de la corporación.[3] Bayamón Steel, por su parte, contestó la reconvención negando todo lo alegado.

El 30 de octubre de 1996, el foro de instancia <u>desestimó</u> la demanda incoada por Bayamón Steel contra los codemandados Villa; <u>ello no obstante</u>, ordenó la continuación del procedimiento judicial, específicamente, en cuanto a las reconvenciones presentadas. Tras varios trámites procesales, que incluyeron la celebración de una vista, el referido foro determinó que la actuación de Bayamón Steel, consistente en embargar bienes de BOSY y obtener una orden de prohibición de enajenar, fue la causa de los daños y perjuicios sufridos por los codemandados. En tal virtud, <u>condenó a Bayamón Steel</u> a pagar a Javier A. Villa la suma de trece mil dólares[4] y a Marino A. Villa la suma de ochenta y cuatro mil trescientos veintinueve

---

[3] Agregaron que el cierre de BOSY les causó pérdidas económicas que, según el codemandado Marino A. Villa ascienden a más de $50,000.00 y, según el otro codemandado, Javier A. Villa, son mayores de $25,000.00. Además, alegaron que a consecuencia de las actuaciones de Bayamón Steel han sufrido angustias mentales y daños emocionales.

[4] Estos $13,000 fueron desglosados por el foro de instancia de la siguiente manera: $3,000 por concepto de daños emocionales y mentales como consecuencia de la orden de prohibición de enajenar que provocó el cierre de Barrio Obrero Steel, $5,000 por los daños "a su relación personal con el Banco y el Comercio" y $5,000 por los gastos legales incurridos como consecuencia de la prohibición de enajenar que "provocó el cierre de las operaciones de BOSY [Barrio Obrero Steel]". En relación con los daños sufridos a su relación personal con la banca y el comercio, los atribuyó al embargo y a la prohibición de enajenar. No especificó cuál de estos actos prevaleció ni en qué proporción se deberían fijar.

dólares.[5] <u>Además, le ordenó a United Surety & Indemnity que hiciera efectivo dicho pago</u>.[6]

United Surety & Indemnity, por su parte, instó una acción independiente sobre sentencia declaratoria y nulidad de sentencia. En la misma alegó, entre otras cosas, que la <u>enmienda</u> a la demanda efectuada por Bayamón Steel, <u>sin su consentimiento</u>, tuvo el <u>efecto de relevarla</u> de su obligación de responder por los daños ocasionados a raíz de los mecanismos de aseguramiento de sentencia solicitados. Los codemandados Villa solicitaron la desestimación de la demanda y/o que se dictara sentencia sumaria a su favor, arguyendo que, como fiador solidario, United Surety & Indemnity debía responder por todos los daños causados.

El tribunal de instancia emitió una sentencia parcial final concluyendo, entre otras cosas, que la enmienda a la demanda realizada por Bayamón Steel, en la que añadió una nueva causa de acción y dos nuevos demandados, constituyó

---

[5] De éstos, $50,000 correspondían a la pérdida en la venta de materiales y equipo gravados a su favor por $70,000 con la hipoteca de bienes muebles los cuales "tuvieron que venderse" en $20,000; $16,329 por la pérdida en el recobro de cuentas por cobrar ocasionada por el embargo; $6,000 de gastos legales incurridos en la tramitación del caso; $7,000 por desembolso al Tribunal de Quiebras y $5,000 por daños "a su relación personal con el comercio y la banca" ocasionados por el embargo y la prohibición de enajenar. Al igual que con el codemandado Javier A. Villa, el foro de instancia no especificó una proporción atribuible a las últimas alegadas actuaciones.

[6] En la alternativa, se le citó para que mostrara causa por la cual no debería ser obligada a pagar. Asimismo, se le notificó la sentencia emitida en contra de Bayamón Steel.

una modificación que <u>no</u> tuvo ningún efecto en la obligación contraída por United Surety & Indemnity. En tal virtud, concluyó que esta última <u>no</u> quedó liberada de su compromiso como fiadora de Bayamón Steel. Asimismo, dispuso que la fianza emitida el 20 de octubre de 1994 garantizaba y cubría no sólo los daños que pudiese causar el embargo, sino también, la prohibición de enajenar.

Inconforme con dicho dictamen, United Surety & Indemnity acudió ante el Tribunal de Apelaciones. Mediante sentencia de 31 de octubre de 2000 el referido foro resolvió que "la fianza judicial suscrita por United se expidió para que el tribunal autorizase el embargo de bienes, [y] no una solicitud de prohibición de enajenar." Sostuvo que la enmienda a la demanda realizada posteriormente por Bayamón Steel, a los efectos de acumular nuevos demandados, incluir una nueva causa de acción y solicitar la expedición de una orden de prohibición de enajenar, no fue notificada a --ni consentida por-- United Surety & Indemnity. En tal virtud, concluyó que esta última <u>sólo</u> debía responder por los daños causados a consecuencia del embargo preventivo que fue solicitado como parte de la acción de cobro de dinero originalmente instada. De este modo, el foro apelativo

intermedio redujo la cuantía de la indemnizaciones concedidas por el tribunal de instancia.[7]

Insatisfechos, los codemandados Villa acudieron ante este Tribunal --vía *certiorari*-- alegando, en síntesis, que el Tribunal de Apelaciones incidió al concluir que la obligación que como fiador asumió United Surety & Indemnity estaba limitada a los daños causados a consecuencia del embargo preventivo que fue solicitado como parte de la acción de cobro de dinero originalmente instada.

Expedimos el recurso. Contando con las comparecencias de ambas partes, y estando en condición de resolver el mismo, procedemos a así hacerlo.


I

El Artículo 1722 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4872, dispone, específicamente, que la fianza puede ser de tres tipos: convencional, legal o judicial. Refiriéndonos, en particular, a las fianzas judiciales se ha señalado que se trata de aquellas "requeridas por los tribunales en el ejercicio legítimo de sus funciones, y que persiguen dar efectividad a las órdenes y sentencias que se dicten en los diversos asuntos que se atienden a diario." José R. Vélez Torres, Curso de

---

[7] Las indemnizaciones de Mariano y Javier Villa fueron reducidas de $84,000.00 a $31,829.00 y de $13,000.00 a $2,500.00, respectivamente.

Derecho Civil: Derecho de Contratos, Ed. Revista Jurídica de la Universidad Interamericana de Puerto Rico, San Juan, 1990, T.II, Vol. IV, pág. 532.

Algunos de los elementos característicos de esta figura jurídica son los siguientes: (i) se trata de una garantía personal y no real; (ii) es accesoria a la obligación principal; (iii) constituye una obligación solidaria por lo que no procede exigir la excusión de bienes del fiado; (iv) puede constituirse mediante un contrato gratuito u oneroso. Véase: G.E.C. & L. v. So.T. & O.Dist., 132 D.P.R. 808, 814-15 (1993); García v. Commonwealth Insurance Co., 108 D.P.R. 380, 386 (1987); Caribe Lumber & Trading Co. v. Inter-American Builders, Inc., 101 D.P.R. 458, 467-68 (1973); Vélez Torres, Curso de Derecho Civil: Derecho de Contratos, ante, a las págs. 529-31.

Por otro lado, el Artículo 1726 de nuestro Código Civil, 31 L.P.R.A. sec. 4876, en su primer párrafo, establece tres principios medulares que rigen la normativa de esta clase de contrato; a saber: la fianza nunca se supone, siempre deberá ser expresa y la misma nunca podrá extenderse más allá de lo contenido en ella. A esos efectos, hemos señalado que "a los fiadores no puede hacérseles responsables más allá de aquello a que se obligaron." Stella, Hoy su Sucn. v. Municipio, 76 D.P.R. 783, 799 (1954); Avalo v. Cacho, 71 D.P.R. 105, 110

(1950). Véase, además: <u>García</u> v. <u>Commonwealth Insurance Co.</u>, ante, a la pág. 392.

Aun cuando la doctrina prevaleciente es en el sentido de que las fianzas prestadas en consideración al pago de primas deben ser interpretadas liberalmente a favor de sus beneficiarios, <u>este Tribunal ha sido enfático al expresar que ello no constituye carta blanca para imponer, mediante interpretación, obligaciones que un fiador nunca pensó asumir</u>. Véase: <u>Caguas Plumbing, Inc</u>. v. <u>Continental Construction, Corp.</u>, res. el 30 de noviembre de 2001, 2001 T.S.P.R. 164; <u>Mun. de San Juan</u> v. <u>Stadium & Coliseum Operators, Inc.</u>, 113 D.P.R. 490, 494 (1982); <u>Demas</u> v. <u>Builders, Inc., Co.</u>, 109 D.P.R. 774, 781 (1980).

Un ejemplo de este principio lo encontramos en <u>Caguas Plumbing, Inc</u>. v. <u>Continental Construction, Corp.</u>, ante, donde, citando a <u>Mun. de San Juan</u> v. <u>Stadium & Coliseum Operators, Inc.</u>, ante, explicamos que la doctrina de interpretación liberal de la fianza tiene como <u>límite natural</u> el principio mayor de la supremacía de la voluntad de las partes. A esos efectos, señalamos que "si bien nuestra jurisprudencia ha resuelto que un contrato de fianza ha de interpretarse liberalmente, de modo que favorezca las reclamaciones de terceros beneficiados, dicha interpretación no puede abstraerse de la verdadera intención de las partes." Según concluimos, en este tipo de casos "[d]ebe atenderse, en primer plano, el texto del

contrato, visto en su totalidad y de acuerdo a las reglas de hermenéutica dispuestas en nuestro Código Civil." *Ibid*.

II

Como señaláramos anteriormente, en el presente caso Bayamón Steel solicitó del tribunal una orden de embargo preventivo para asegurar la efectividad de la sentencia que en su día pudiera recaer <u>en un pleito por cobro de dinero</u> instado contra BOSY. Para responder por los daños y perjuicios que dicho embargo pudiera causar, Bayamón Steel obtuvo de United Surety & Indemnity una fianza, la cual fue expedida y aceptada por el tribunal.[8]

---

[8] La misma disponía lo siguiente:

> POR CUANTO: El demandante "BAYAMÓN STEEL PROCESSORS, INC.", ha establecido una acción civil contra la parte demandada.
>
> POR CUANTO: El demandante ha solicitado el aseguramiento de la Sentencia que pudiera recaer a su favor en dicha acción.
>
> POR CUANTO: Este Honorable Tribunal ha exigido la presentación de una fianza por la suma e TRESCIENTOS MIL DÓLARES ($300,000.00) como condición previa a dicho aseguramiento y para responder a los daños y perjuicios que causen como consecuencia de dicho aseguramiento al aquí demandado o a cualquier tercero.
>
> POR TANTO: Nosotros BAYAMÓN STEEL PROCESSORS, INC., como Principal y UNITED SURETY & INDEMNITY COMPANY como Fiadora, siendo ésta una corporación debidamente autorizada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, garantizamos la obligación que ha contraído la parte demandante en la acción civil de epígrafe respondiendo a la suma de TRESCIENTOS MIL DÓLARES ($300,000.00) para responder de los daños y

(Continúa . . .)

Cinco días después de que United Surety & Indemnity prestara la referida fianza, Bayamón Steel presentó una demanda enmendada en la cual añadió una causa de acción en fraude de acreedores y acumuló dos nuevos demandados. Además, solicitó --y obtuvo-- del tribunal la expedición de una orden de prohibición de enajenar en contra de BOSY; todo ello sin notificar previamente a la compañía fiadora. Esto explica la alegación de United Surety & Indemnity a los efectos de que, por no haber sido notificada de la demanda enmendada, ha quedado liberada de responder por los daños que tanto el embargo como la prohibición de enajenar hubieren causado. De este modo, arguye que la obligación que contrajo originalmente ha sufrido una modificación extintiva. En ese aspecto, no le asiste la razón; veamos por qué.

Nuestro Código Civil contiene una disposición que es categórica al disponer que para que una obligación quede extinguida es preciso que así se declare terminantemente o que la obligación original y la nueva sean de todo punto incompatibles. Artículo 1158, 31 L.P.R.A. sec. 3242. Esto es, el llamado "efecto novatorio extintivo" se produce solamente cuando las partes lo han querido y así lo han declarado en forma inequívoca, o, en su defecto, cuando la intención de novar se deriva de la incompatibilidad

_____

perjuicios que se causen por consecuencia de dicho aseguramiento al aquí demandado o cualquier tercero.

absoluta entre las dos obligaciones. Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. 378, 389 (1973); Goble & Jiménez, Inc. v. Doré Rice Mill, Inc., 108 D.P.R. 89, 91 (1978). En tal virtud, este Tribunal ha expresado que por estar en juego una cuestión de intención, la novación nunca se presume. *Ibid*. Es importante recordar que para que exista la novación extintiva es imprescindible que la obligación original desaparezca. Véase: José R. Vélez Torres, Curso de Derecho Civil: Derecho de Obligaciones, 2da. ed., Ed. Revista Jurídica de la Universidad Interamericana de Puerto Rico, San Juan, 1997, págs. 225-226.

Es por lo antes expuesto que entendemos que, a diferencia de lo que alega United Surety & Indemnity, el caso de marras realmente no versa sobre una novación extintiva. La obligación original que United Surety & Indemnity contrajo en ningún momento ha dejado de existir. Como señaláramos anteriormente, United Surety & Indemnity se obligó a garantizar los daños que el embargo --efectuado a raíz de la demanda en cobro de dinero-- pudiera ocasionar. Esta obligación ha quedado intacta. La posterior enmienda a la demanda, presentada por Bayamón Steel, no la hizo desaparecer.

Tampoco estamos ante un caso en que las partes hayan expresado inequívocamente su deseo de que la obligación quede extinta o ante la situación en que una nueva obligación resulta de todo punto incompatible con la

original. Por tanto, no cabe hablar de la ocurrencia de una novación extintiva que releve a United Surety & Indemnity de responder por los daños ocasionados como consecuencia del embargo. Claro, que tampoco estamos ante un caso de novación modificativa como, en efecto, alega una minoría de este Tribunal.

A diferencia de lo que sucede en la novación extintiva, en la modificativa sí se mantiene el régimen normativo que regía la obligación original, sólo que ahora la obligación ha sido "renovada". Ello ocurre siempre que falte el *animus novandi* o haya compatibilidad entre las obligaciones. Vélez Torres, Curso de Derecho Civil: Derecho de Obligaciones, ante, pág. 227. Ahora bien, es importante aclarar que, aun en el caso de la novación modificativa, donde no es necesario el *animus novandi*, la modificación de la obligación original no puede quedar al arbitrio de una sola de las partes.

Como es sabido, el elemento característico que distingue toda relación jurídica obligacional radica en que siempre involucra a dos partes: la deudora y la acreedora. Manuel Albaladejo, Derecho Civil: Derecho de Obligaciones, 10ma. ed., Barcelona, J.M. Bosch, 1997, T.II, pág. 19. A tales efectos, se ha señalado que "[e]n cuanto a los sujetos que intervienen en la relación, ... la ley contempla la existencia de un deudor (elemento pasivo) y un acreedor (elemento activo)." Vélez Torres, Curso de Derecho Civil: Derecho de Obligaciones, ante,

pág. 7. Ello significa que en toda obligación jurídica el acreedor siempre se sitúa frente a un deudor determinado o determinable. *Ibid*. La presencia de estos dos sujetos es indispensable tanto en el momento en que nace la obligación como al momento en que la misma se modifica o extingue.

En el presente caso Bayamón Steel enmendó su demanda, y solicitó un nuevo método de aseguramiento de sentencia, sin notificar a United Surety & Indemnity; esto es, actuó en ausencia de un nuevo proceso de negociación en el cual United Surety & Indemnity tuviera la oportunidad de evaluar --y aceptar-- los nuevos riesgos a los que se enfrentaba en la eventualidad de que tuviera que responder por los daños causados a consecuencia de la prohibición de enajenar que se solicitaba. A ello se une el agravante de que Bayamón Steel enmendó su demanda original, no sólo para incluir una nueva causa de acción --donde se imputaba un fraude de acreedores-- sino, además, para acumular dos nuevos demandados. Es evidente que este nuevo cuadro fáctico resultaba mucho más riesgoso que una simple acción en cobro de dinero, la cual, a todas luces, aparentaba ser válida, líquida y exigible. Una modificación de este tipo definitivamente requería el concurso y consentimiento de ambas partes.

Lo anteriormente expuesto es suficiente para concluir que Bayamón Steel estaba impedida de modificar, unilateralmente, la obligación original. Ya hemos señalado

que la fianza no puede extenderse más allá de lo contenido en ella, la misma siempre deberá ser expresa y ésta nunca podrá ser objeto de suposiciones. No podemos exigirle a United Surety & Indemnity que responda más allá de aquello a lo que se obligó. Véase: Stella, Hoy su Sucn. v. Municipio, ante, a la pág. 799; Avalo v. Cacho, ante, a la pág. 110; García v. Commonwealth Insurance Co., ante, a la pág. 392.

Concluir lo contrario necesariamente implicaría responsabilizar a la compañía fiadora por unos daños --causados a raíz de una prohibición de enajenar-- que United Surety & Indemnity definitivamente no garantizó. Ello abriría las puertas para que un demandante, con la simple enmienda a una demanda, pueda --unilateralmente-- extender la obligación del fiador más allá de lo pactado.[9]

---

[9] Esta situación ha sido objeto de estudio en la jurisdicción norteamericana. Por ejemplo, en Bayham v. Maryland Nat.Ins.Co., 415 P. 2d 120 (Ariz.App., 1966), el Tribunal Apelativo de Arizona liberó a la compañía fiadora en cuanto a las enmiendas efectuadas en la demanda original. A esos efectos, expresó:

> "we cannot find where the surety contemplated or agreed upon additional causes of action and therefore should be released therefrom. We hold the amendment of the complaint by adding the new causes of action subsequent to the giving of the bond operates as release of the surety upon such bond against that portion of the judgment based upon de new causes of action. As to the original cause of action which was carried over in the amended complaint and into the judgment there is no release." *Ibid*. a la pág. 125.

Del mismo modo, en Hall v. Cutler Bindery Co., 26 P. 2d 1109 (Or., 1933) y Petri v. Manny, 170 P. 127 (Wash.,

(Continúa . . .)

Dicho curso de acción resulta ser, llana y sencillamente, inaceptable.

En virtud de lo antes expuesto concluimos, tal y como lo hizo el foro apelativo intermedio, que en el caso de marras no estamos ante una novación, ni modificativa ni extintiva, sino ante un nuevo método de aseguramiento de sentencia para el cual el demandante no obtuvo fianza alguna.[10] A esos efectos, coincidimos con el foro apelado en cuanto a que en el presente caso United Surety & Indemnity sólo debe responder por los daños ocasionados como resultado del embargo de bienes solicitado. Ello, naturalmente, significa que la parte demandante, Bayamón Steel Processors, Inc., deberá responder por los daños y perjuicios ocasionados por la prohibición de enajenar,

---

1918), se liberó a la compañía fiadora de toda responsabilidad por las enmiendas efectuadas a la demanda. A esos mismos efectos, en el caso White v. Nemours Trading Corp., 290 F 250 (D.C.Mass., 1923), citando a Doran v. Cohen, 17 N.E. 647, 648 (Mass., 1888), se dispuso que "[t]he sureties upon a bond to dissolve an attachment are not discharged by an amendment of the declaration, unless its effect is to let in a new cause of action, and thus to impose upon them a liability greater than that which they assumed by signing the bond." (énfasis suplido).

[10] Esto es, la fianza emitida para asegurar el embargo preventivo, ordenado originalmente por el Tribunal de Primera Instancia, no se puede extender sin el consentimiento de la fiadora al aseguramiento de los riesgos que comprenden una nueva orden de prohibición de enajenar emitida por ese tribunal posteriormente, a solicitud de la parte demandante. La fiadora sólo responde por los daños y perjuicios que le pudieran ocasionar a la parte demandada como consecuencia de la previa orden dictada sobre embargo preventivo.

según fueron debidamente computados por el foro de instancia.[11]

III

Por los fundamentos antes expuestos, procede decretar la <u>confirmación</u> de la sentencia emitida por el Tribunal de Apelaciones en el presente caso.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[11] Es de advertir que en el presente caso el foro apelativo intermedio se limitó a modificar la sentencia parcial apelada por United Surety & Indemnity, confirmando <u>expresamente</u> al foro de instancia en cuanto al resto de la sentencia.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

United Surety & Indemnity
Company
        Demandante-recurrida

            vs.                              CC-2001-23      CERTIORARI

Bayamón Steel Processors,
Inc., et al.
        Codemandados-recurridos

Marino A. Villa, et al.
        Codemandados-peticionarios

SENTENCIA

San Juan, Puerto Rico, a 13 de abril de 2004

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita. La Juez Presidenta señora Naveira Merly disiente con Opinión escrita. El Juez Asociado señor Hernández Denton inhibido.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

United Surety & Indemnity
Company
        Demandante recurrida

            v.
                                        CC-2001-23

Bayamón Steel Processors, Inc.,
*et al.*
        Codemandados recurridos

Marino A. Villa, *et al.*
        Codemandados peticionarios

Opinión Disidente emitida por la Jueza Presidenta señora NAVEIRA MERLY

San Juan, Puerto Rico a 13 de abril de 2004

Lejos de pretender abrir la puerta para que un demandante, con una enmienda a la demanda, unilateralmente pueda extender la obligación del fiador más allá de lo pactado, entendemos que las circunstancias del caso de marras, la naturaleza del contrato de fianza, la correspondencia entre la finalidad de las obligaciones contraídas antes y después de la enmienda a la demanda y los términos del contrato suscrito entre las partes, demuestran que la fiadora quedó obligada a responder por los daños y perjuicios ocasionados por el embargo

preventivo y la prohibición de enajenar. En vista de que la mayoría ha resuelto lo contrario, disentimos.

A continuación detallaremos el trasfondo fáctico y procesal del recurso de epígrafe, según consta en autos.

I

Barrio Obrero Steel Yard, Inc. (en adelante BOSY) era una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico que en 1983 compró un negocio en marcha de venta de acero por la suma $500,000.00. Para dicha transacción el Sr. Marino Villa, accionista de la corporación, hizo un préstamo a BOSY por $200,000.00 garantizado con una hipoteca y con un contrato de refacción industrial. Estas garantías gravaron todos los bienes muebles de BOSY, el efectivo, el inventario y las cuentas por cobrar.

Bayamón Steel Processors, Inc. (en adelante Bayamón Steel) fue un suplidor de BOSY, que por varios años, sin garantía ni colaterales, le aprobó una línea de crédito que llegó a alcanzar la suma de $300,000.00. Al momento en que se presentó la demanda en el presente caso la deuda de BOSY con Bayamón Steel ascendía a la cantidad de $154,806.20.

Ante la imposibilidad de pagar lo adeudado al Sr. Marino Villa, a principios de 1994 BOSY autorizó la venta de bienes y activos de la corporación. Aproximadamente en octubre de 1994 Bayamón Steel advino en conocimiento de la enajenación que BOSY se proponía llevar a cabo. Para evitar dicha transacción, el 18 de octubre de 1998 Bayamón Steel presentó una demanda en cobro de dinero contra BOSY en el Tribunal de Primera Instancia, Sala

Superior de San Juan.[12]   Reclamó la cantidad adeudada, costas, intereses y honorarios de abogado.  Al día siguiente Bayamón Steel solicitó al foro de instancia una orden de embargo preventivo hasta la suma de $200,000.00 para asegurar la efectividad de la sentencia que en su día recayera a su favor.  Bayamón Steel suscribió el contrato de fianza número 9422710 con United Surety & Indemnity Company (en adelante United) por la cantidad de $300,000.00 para "responder de los daños y perjuicios que se caus[aran] por consecuencia [del] aseguramiento al demandado o [a] cualquier tercero".[13]  El foro de instancia emitió la orden solicitada el 20 de octubre de 1994, la cual fue diligenciada el 24 de octubre.  Bayamón Steel embargó una cuenta corriente de BOSY con un balance de $5,585.85 y unas cuentas por cobrar por la suma de $26,772.00.

El 25 de octubre de 1994 Bayamón Steel enmendó la demanda para incluir una segunda causa de acción por fraude de acreedores y para traer al pleito como codemandados a los Sres. Marino, Juan Carlos y Javier Villa (en adelante los señores Villa), sus respectivas esposas y las sociedades legales de gananciales compuestas por éstos.  Alegó en la demanda enmendada que BOSY había gravado sus cuentas por cobrar a favor del Sr. Marino Villa por la cantidad de $175,000.00, en virtud de la hipoteca y contrato de refacción suscrito con éste, con el propósito de defraudar a los acreedores de la corporación.  Adujo, además, que los señores Villa, como accionistas de BOSY, eran solidariamente responsables por la cantidad que ésta le adeudaba a Bayamón Steel.

---

[12]   *Bayamón Steel Processors, Inc. v. Barrio Obrero Steel Yard, Inc.,* KCD-94-0538.

[13]   Contrato de fianza fechado 20 de octubre de 1994.

Así las cosas, Bayamón Steel presentó una solicitud de prohibición de enajenar contra BOSY, que fue declarada con lugar el 28 de octubre de 1994 y diligenciada el 31 de octubre. La referida orden impidió que BOSY continuara operando su negocio, por lo cual se acogió al Capítulo 7 de la Ley de Quiebras el 7 de noviembre de 1994. El tribunal federal ordenó la paralización de los procedimientos contra BOSY.

El 20 de enero de 1995 los señores Villa contestaron la demanda negando que las transacciones fueran hechas en fraude de acreedores y reconvinieron contra Bayamón Steel reclamando daños y perjuicios como consecuencia del embargo y de la prohibición de enajenar. El Sr. Javier Villa reclamó daños que excedían la cantidad de $25,000.00, más sufrimientos y angustias mentales, mientras que el Sr. Mariano Villa reclamó daños en exceso de $150,000.00 más sufrimientos y angustias mentales. Bayamón Steel en su réplica a la reconvención negó que tuviera responsabilidad por los daños ocasionados a los señores Villa.

El 13 de enero de 1995 el Tribunal de Quiebras emitió una orden aprobando una estipulación suscrita por el Síndico y el Sr. Marino Villa en la cual se reconoció la validez de la hipoteca y del contrato de refacción industrial que garantizaban la cantidad adeudada por BOSY. Conforme a la estipulación, el señor Villa debía satisfacer a dicho Tribunal la cantidad de $7,000.00 para obtener la entrega de su colateral, es decir, los bienes muebles y las cuentas por cobrar que anteriormente pertenecían a BOSY.

Luego de los anteriores incidentes procesales, Bayamón Steel presentó una segunda demanda enmendada el 23 de enero de 1995.[14] Alegó que los señores Villa, en su carácter personal, ocultaron y gravaron los bienes de BOSY en fraude de acreedores. Además, solicitó el embargo preventivo de los bienes de los señores Villa. Dicha solicitud fue denegada por el foro de instancia el 5 de junio de 1995.

El 30 de octubre de 1996 el tribunal de instancia emitió sentencia parcial desestimatoria de la demanda instada por Bayamón Steel y ordenó la continuación de los procedimientos relacionados con las reconvenciones presentadas por los señores Villa. La vista en su fondo para adjudicar las reconvenciones fue celebrada el 1 de diciembre de 1997. Bayamón Steel no compareció, por lo que se le anotó rebeldía. Luego de evaluar la prueba documental y testifical presentada, el 4 de febrero de 1998 el tribunal *a quo* emitió sentencia parcial declarando con lugar las reconvenciones e imponiendo a Bayamón Steel la obligación de indemnizar al Sr. Marino Villa la cantidad de $84,000.00 y al Sr. Javier Villa la suma de $13,000.00 por daños y perjuicios.

El 16 de marzo de 1998 los señores Villa solicitaron al foro sentenciador que ordenara a United, como fiadora, pagar la sentencia. Mediante orden emitida el 31 de marzo de 1998 dicho foro impuso a United el pago de la indemnización o, en la alternativa, le concedió término para que compareciera a mostrar causa por la cual no debía responder por los daños. El 22 de abril de 1998 United radicó una demanda en la cual solicitó sentencia

---

[14] En la segunda demanda enmendada se excluyó a los codemandados Sr. Juan Carlos Villa, su esposa y la sociedad legal de gananciales compuesta por ambos.

declaratoria y nulidad de sentencia.[15]   Alegó que la sentencia contra Bayamón Steel se obtuvo en un procedimiento en rebeldía que no le fue notificado.   Además, señaló que Bayamón Steel no le notificó la enmienda a la demanda mediante la cual añadió una causa de acción por fraude de acreedores y que tal circunstancia la había liberado de la fianza.   Los señores Villa solicitaron la desestimación de la demanda o que se dictara sentencia sumaria a su favor.   Alegaron que como fiador solidario United era responsable por los daños y perjuicios que les habían ocasionado el embargo y la prohibición de enajenar.

El 7 de marzo de 2000 el foro de instancia emitió sentencia en la que determinó que United debía indemnizar a los señores Villa los daños y perjuicios que les fueron ocasionados.   Resolvió que la enmienda a la demanda de Bayamón Steel, mediante la cual se acumuló una causa de acción por fraude de acreedores con una por cobro de dinero, constituyó una novación modificativa que no extinguió la fianza y, por ende, ésta se extendía a los daños ocasionados a los señores Villa con la prohibición de enajenar.   Con relación a la notificación del procedimiento en su contra, concluyó que United había sido notificada a tenor de la norma expuesta en *Caribbean Ins. Co. v. Tribunal de Distrito*, 99 D.P.R. 91 (1970).

United apeló el anterior dictamen ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito), el cual emitió sentencia el 31 de octubre de 2000.   Determinó que conforme a los términos del contrato de fianza, United únicamente se obligó a responder por los daños y perjuicios que pudieran ocasionarse a BOSY o a un tercero como consecuencia del embargo preventivo en la

---

[15]   *United Surety & Indemnity Company v. Bayamón Steel Processors, Inc., et al.*, KAC-98-0443.

acción por cobro de dinero.  El foro apelativo resolvió que la enmienda a la demanda para acumular la causa de acción por fraude de acreedores y la solicitud de prohibición de enajenar no fueron consentidas por United y, por tanto, la fianza no se extendió a los daños ocasionados por la prohibición de enajenar.  A la luz de lo anterior, modificó la sentencia emitida por el tribunal de instancia a los efectos de limitar la responsabilidad de United a los daños y perjuicios ocasionados por el embargo preventivo en la demanda por cobro de dinero.[16]  Los señores Villa presentaron una moción de reconsideración ante el foro apelativo, que fue denegada mediante Resolución de 19 de diciembre de 2000.

Inconformes con el anterior dictamen, los señores Villa acudieron ante nos mediante recurso de *certiorari*. En síntesis, aducen que el foro apelativo incidió al limitar la responsabilidad de United al pago de los daños ocasionados en virtud de la orden de embargo preventivo emitida a instancias de Bayamón Steel y al rehusar extender la efectividad de la fianza a los daños ocasionados por la prohibición de enajenar.

Examinemos los preceptos aplicables a la controversia de marras.

## II
### A.   El contrato de fianza

La fianza es un contrato de garantía por medio del cual una persona, natural o jurídica, se obliga a pagar o a cumplir por un tercero, en caso no hacerlo el principal obligado.  Art. 1721 del

---

[16]   Las indemnizaciones a los Sres. Mariano y Javier Villa fueron reducidas de $84,000.00 a $31,829.00 y de $13,000.00 a $2,500.00, respectivamente.

Código Civil, 31 L.P.R.A. sec. 4871. Este contrato implica la existencia de una obligación principal y de una accesoria pactada para garantizar el cumplimiento de la obligación principal. Entre el deudor y el acreedor surge una obligación principal, mientras la obligación accesoria nace entre el acreedor y el fiador. José Puig Brutau, *Compendio de Derecho civil*, Vol. II, Bosch, 3era ed., 1997, pág. 561. La fianza no se presume, sino que debe ser expresa y no puede extenderse a más de lo convenido. Art. 1726 del Código Civil, 31 L.P.R.A. sec. 4876.

Entre los caracteres de la fianza, de acuerdo con la doctrina española, se encuentran: (a) la *accesoriedad*, ya que no puede concebirse sin la existencia de una obligación principal; (b) la *subsidiaridad*, en virtud de la cual el fiador solamente se obliga en la eventualidad de que el deudor incumpla con su obligación; (c) es un contrato *consensual* y de contenido *obligacional* porque se perfecciona por la manifestación del consentimiento; (d) puede ser *gratuito* u *oneroso*, dependiendo si se ha convenido una retribución para el fiador; y (e) puede ser *unilateral* o *bilateral*. José Castán Tobeñas, *Derecho civil español, común y foral*, Tomo 4, Reus, 1993, págs. 767-768; *Rosa Núñez v. Ortiz Lebrón*, res. el 27 de agosto de 2002, 157 D.P.R. _____ (2002), 2002 T.S.P.R. 112, 2002 J.T.S. 118; *G.E. C. & L. V. So. T. & O. Dist.*, 132 D.P.R. 808, 814 (1993). Además, se ha señalado que es un contrato *abstracto*, ya que **"la firmeza de la obligación del fiador frente al acreedor es independiente de las vicisitudes entre fiador y deudor"**. Puig Brutau, *supra*, pág. 563.[17] (Énfasis suplido.)

---

[17] Debemos puntualizar que las anteriores características pueden experimentar algunas variaciones cuando se trata de una fianza judicial, que es *solidaria*.

A tenor del Art. 1722 del Código Civil, 31 L.P.R.A. sec. 4872, la fianza puede ser convencional, legal o *judicial*, gratuita o a título *oneroso*. Tras admitirse el carácter oneroso de la fianza, la interpretación de estos contratos ha experimentado grandes cambios. Anteriormente tanto la doctrina como la normativa estaban enmarcadas en una interpretación restrictiva de los contratos de fianza en vista de que el fiador asumía la garantía de una obligación sin ánimo de lucro. Sin embargo, **el advenimiento de las compañías fiadoras que se dedican a la prestación de fianzas mediante el pago de primas y la profesionalización de la industria aseguradora, llevó a favorecer la interpretación liberal de los contratos de fianza con el objetivo de proteger a los terceros beneficiados**. *Caguas Plumbing, Inc. v. Continental Const., Corp.*, res. el 30 de noviembre de 2001, 155 D.P.R. _____ (2001), 2001 J.T.S. 169, 2001 T.S.P.R. 164; *A.L. Arzuaga v. La Hood*, 90 D.P.R. 104, 112 (1964).

Para la solución de la controversia que nos ocupa, es menester examinar la figura de la fianza judicial. Fianza judicial es aquella decretada por los tribunales en los procedimientos adecuados. De acuerdo con Scaevola, es una especie de fianza legal con la característica de que se presta para fines procesales, según sea requerida por las reglas de enjuiciamiento. Quintus Mucius Scaevola, *Código Civil*, Tomo XXVIII, Reus, 1953, pág. 518.

En *García v. The Commonwealth Ins. Co.*, 118 D.P.R. 380, 386 (1987), indicamos que **"la nota característica de la fianza judicial radica en su solidaridad"**. (Énfasis suplido.) En consecuencia, el fiador no tiene el beneficio de excusión de bienes del deudor

principal. Art. 1755 del Código Civil, 31 L.P.R.A. sec. 4973.[18] Esta condición persigue evitar el retraso de los procedimientos judiciales. Toda vez que el fiador, tan pronto se convierte en tal, se entiende sometido a la jurisdicción del tribunal, Art. 1727 del Código Civil, 31 L.P.R.A. sec. 4877, puede ser compelido a cumplir con la obligación del deudor. José Ramón Vélez Torres, *Curso de Derecho civil, Derecho de contratos*, Tomo IV, Vol. II, Univ. Interamericana de Puerto Rico, 1990, pág. 534. En todos aquellos aspectos que no se encuentren expresamente dispuestos en la legislación, la fianza judicial se rige por las normas aplicables a las obligaciones solidarias. Castán Tobeñas, *supra*, en la pág. 772.

Debido a que el recurso de marras versa sobre la extinción de una fianza judicial, es necesario examinar sus causas de extinción. Sobre el particular, el Art. 1746 del Código Civil, 31 L.P.R.A. sec. 4951, dispone que "[l]a obligación del fiador se extingue al mismo tiempo que la del deudor, y por las mismas causas que las demás obligaciones". De otra parte, el Art. 1110, 31 L.P.R.A. sec. 3151, indica que las obligaciones pueden extinguirse por: el pago o cumplimiento; la pérdida de la cosa debida; la condonación de la deuda; la confusión de los derechos de acreedor y deudor; la compensación y la **novación**. En el caso de autos Bayamón Steel garantizó mediante una fianza expedida por United los daños y perjuicios que pudiera ocasionar el aseguramiento de sentencia mediante embargo preventivo en una demanda por cobro de dinero. Posteriormente Bayamón Steel enmendó la demanda para incluir a los

---

[18]    Por el contrario, en la fianza simple el fiador cuenta con el beneficio de excusión de los bienes del deudor. Art. 1729 del Código Civil, 31 L.P.R.A. sec. 4891.

señores Villa en una causa de acción por fraude de acreedores y solicitó una orden de prohibición de enajenar para asegurar la efectividad de la sentencia. A la luz de lo anterior, nos corresponde examinar si la enmienda a la demanda tuvo el efecto de novar la obligación que tenía United, como fiador solidario, de satisfacer los daños y perjuicios que ocasionó el aseguramiento de la sentencia.

B.    La novación

Se entiende por novación la transformación o sustitución de una obligación por otra. Scaevola, *supra*, pág. 669. Esta figura jurídica tiene como característica una obligación anterior que queda sustituida o únicamente modificada por una posterior. Puig Brutau, *supra*, pág. 123. Las obligaciones pueden modificarse variando su objeto o sus condiciones principales; sustituyendo la persona del deudor; o subrogando a un tercero en los derechos del acreedor. Art. 1157 del Código Civil, 31 L.P.R.A. sec. 3241. Nuestro Código Civil admite la novación extintiva y modificativa. Véase *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983).

Al interpretar el Art. 1157, *supra*, equivalente al Art. 1203 del Código Civil español, el tratadista Diez-Picazo señala que aunque se hayan dado todas las hipótesis incluidas en éste, no se produce necesariamente la extinción de la obligación anterior y el nacimiento de una nueva obligación. De acuerdo con su tesis, **para que tenga lugar una novación extintiva, resulta necesario que estén presentes los supuestos contemplados en el Art. 1158, 31 L.P.R.A. sec. 3242, es decir, que se declare terminantemente la intención de**

**extinguir la obligación anterior o que la antigua y la nueva obligación sean de todo punto incompatibles**.  Luis Diez-Picazo y Antonio Gullón, *Sistema de Derecho civil*, Vol. II, 6ta ed., Tecnos, 1989, pág. 255.  **La novación extintiva puede surgir porque así lo hayan expresado las partes o porque de la prueba surja su voluntad de extinguir la obligación anterior por otra incompatible con la primera**.  *Miranda Soto v. Mena Ero*, 109 D.P.R. 473, 479 (1980).  En caso de estar presente alguna de las anteriores circunstancias, la obligación principal quedará extinguida y solamente subsistirán las obligaciones accesorias "en cuanto aprovechen a terceros que no hubiesen prestado su consentimiento".  Art. 1161 del Código Civil, 31 L.P.R.A. sec. 3245.

La alteración de alguna condición principal o del objeto de la obligación no constituye de por sí una novación extintiva cuando no exista una voluntad expresa o total incompatibilidad entre ambas obligaciones.  **Se entenderá que existe total incompatibilidad entre ambas obligaciones cuando se produzca un cambio en la naturaleza de la obligación**.  Diez-Picazo, *supra*, pág. 256; Francisco de Asís Sancho Rebullida, *La novación de las obligaciones*, Ediciones Nauta, 1964, pág. 165, 347.  En *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378, 391 (1973), indicamos que:

> Debe tenerse presente que la extinción de la obligación conlleva la extinción de las garantías y demás derechos accesorios.  Es evidente que una consecuencia tan drástica como ésta sólo puede producirse cuando las partes han tenido clara conciencia de ella.  Es por eso que los tribunales deben examinar con cautela las circunstancias particulares de cada caso para hacer la determinación de si ha habido o no novación extintiva. (Citas omitidas.)

Como expusimos previamente, la novación también puede ser modificativa.  Ello significa que **la alteración en la relación**

**obligacional permite la <u>coexistencia</u> de dos (2) obligaciones sucesivamente contraídas.** Sancho Rebullida, *supra*, pág. 201. El profesor Sancho Rebullida, citando al tratadista Sánchez Román, señala que el cambio de los accidentes de la obligación, sin que varíen sus términos personales o reales, no constituye una novación de ésta. A manera ilustrativa, enumera como posibles casos de novación modificativa la variación del plazo, la adición de fianza, prenda o hipoteca y cualquier cambio de poca trascendencia relacionado con el lugar o forma de cumplimiento. *Id.*, pág. 167. Por supuesto, los términos sobre los cuales recaigan tales cambios no deben haber sido la razón principal para que una de las partes se obligara. "La apreciación de la importancia y si constituye o no novación, es de determinar en cada caso por las reglas de sana crítica y apreciación de los Tribunales". *Id.*

Considerando las normas antes reseñadas, examinemos los hechos ante nos para determinar si en el presente caso hubo una novación que tuviera como consecuencia la extinción o la modificación de la fianza otorgada por United. Mediante el contrato de fianza número 422710 United garantizó los daños y perjuicios que se pudieran ocasionar por el <u>embargo preventivo</u> en una acción de cobro de dinero instada contra BOSY por Bayamón Steel. Posteriormente, cuando Bayamón Steel advino en conocimiento de que BOSY estaba enajenando sus bienes a favor de los señores Villa, enmendó su demanda para solicitar la nulidad de las enajenaciones por haberse llevado a cabo con el propósito de no satisfacer la deuda. Luego de la enmienda Bayamón Steel solicitó al tribunal que emitiera una <u>orden de prohibición de enajenar en aseguramiento de la sentencia</u> que pudiera recaer a su favor.

III

El embargo preventivo y la prohibición de enajenar son remedios provisionales que el foro judicial puede conceder para asegurar la efectividad de una sentencia. Reglas 56.2 a 56.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véase *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 D.P.R. 881 (1993); José A. Cuevas Segarra, *Tratado de Derecho procesal civil*, Publicaciones J.T.S., 2000, págs. 966-988. Salvo en algunas situaciones excepcionales contempladas por las Reglas de Procedimiento civil, el tribunal deberá exigir la prestación de fianza para responder por los daños y perjuicios que se ocasionen como consecuencia del aseguramiento. Regla 56.3 de Procedimiento Civil, *supra*.

> El embargo es una interdicción jurídica en el patrimonio del deudor, decretada a petición ex parte del acreedor reclamante. **Uno de sus efectos procesales es el de sujetar o adscribir los bienes embargados al cumplimiento de la obligación o reclamación ejercitada. Como medida cautelar o asegurativa su vida o eficacia depende de la acción entablada.** *Alum Torres v. Campos del Toro*, 89 D.P.R. 305, 321 (1963). (Énfasis suplido.)

En *Vda. de Galindo v. Cano*, 108 D.P.R. 277, 281 (1979), señalamos que el embargo preventivo tiene el propósito de evitar que la parte demandada oculte o distraiga sus bienes para frustrar las reclamaciones o los derechos del acreedor.

De otra parte, la prohibición de enajenar ha sido definida como "la imposibilidad de transmitir o enajenar a título oneroso o gratuito, una cosa o derecho, en virtud de pacto, precepto legal o de decisión judicial o administrativa". Luis Rafael Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 1era ed., Jurídica Editores, 2000, pág. 419. Véase *Iglesia Católica v. Registrador*, 94 D.P.R. 511 (1968). **Por ser un remedio provisional de**

**aseguramiento de sentencia, su eficacia depende del resultado del litigio, al igual que ocurre con el embargo preventivo. La fianza judicial exigida para que el tribunal autorice el aseguramiento de una sentencia, ya sea por embargo preventivo o prohibición de enajenar, tiene el objetivo de garantizar una obligación en ciernes e indeterminada, que se encuentra atada indefectiblemente al resultado del pleito.** Véase *García v. The Commonwealth, supra*, pág. 391.

En síntesis, ambos remedios provisionales persiguen impedir que el deudor disponga de los bienes objeto del litigio en perjuicio de los intereses del acreedor. La vida de ambos recursos dependerá del resultado del pleito. Además, la fianza requerida para el aseguramiento recae sobre una obligación indeterminada porque también dependerá del resultado de la acción. Por otro lado, lejos de ser incompatibles, los remedios provisionales de embargo preventivo y de prohibición de enajenar, son complementarios. Lo mismo puede decirse de la fianza requerida para su concesión, pues la obligación del fiador es de igual naturaleza en el embargo preventivo y en la prohibición de enajenar, es decir, éste se obliga a responder por los daños y perjuicios ocasionados por uno u otro medio de aseguramiento de sentencia. De hecho, al parecer Bayamón Steel lo entendió de igual forma ya que adujo dos (2) causas de acción, las de cobro de dinero y fraude de acreedores, para asegurar el mismo crédito. De esta forma solicitó al foro de instancia que autorizara el embargo preventivo y la prohibición de enajenar para asegurar la efectividad de la sentencia que en su día pudiera recaer a su favor.

Ante tal correspondencia entre ambos remedios, debemos concluir que una enmienda a la demanda donde se solicita un mecanismo de aseguramiento de sentencia distinto al solicitado originalmente, de por sí, no constituye una novación extintiva, sino modificativa. Por supuesto, la fianza debe ser suficiente para satisfacer los daños que se puedan irrogar con el aseguramiento.

Aporta a nuestra conclusión los términos del contrato de fianza judicial otorgado entre Bayamón Steel y United. En éste las partes acordaron:

> POR CUANTO: El demandante BAYAMÓN STEEL PROCESSORS, INC. ha establecido una acción civil contra la parte demandada.
>
> POR CUANTO: El demandante ha solicitado el aseguramiento de la sentencia que pudiera recaer a su favor en dicha acción.
>
> POR CUANTO: Este Honorable Tribunal ha exigido la presentación de una fianza por TRESCIENTOS MIL DOLARES ($300,000.00) como condición previa a dicho aseguramiento **y para responder a [sic] los daños y perjuicios que causen como consecuencia de dicho aseguramiento al aquí demandado o a cualquier tercero.**
>
> POR TANTO: Nosotros, BAYAMÓN STEEL PROCESSORS, INC. como Principal y UNITED SURETY & INDEMNITY COMPANY como Fiadora, siendo ésta una corporación debidamente autorizada y organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, **garantizamos la obligación que ha contraído la parte demandante en la acción civil de epígrafe respondiendo a la suma de TRESCIENTOS MIL DOLARES ($300,000.00) para responder de los daños y perjuicios que se causen por consecuencia de dicho aseguramiento al demandado o a cualquier tercero.** (Énfasis suplido.)

De las anteriores cláusulas se puede colegir que United se obligó a garantizar, **en términos generales**, los daños y perjuicios que ocasionara el aseguramiento de sentencia en la demanda instada por Bayamón Steel. En *Caguas Plumbing, Inc. v. Continental Const. Corp., supra*, señalamos que "[s]i un contrato de fianza consigna

específicamente cuales son las circunstancias por las que responde el fiador, el tribunal no puede imponerle responsabilidad más allá de lo pactado". El contrato de fianza ante nuestra consideración no fue concebido en términos específicos, sino más bien amplios. Incluso la fiadora se obligó a garantizar los daños y perjuicios ocasionados tanto a Bayamón Steel como a un tercero. Ante estos términos tan amplios y generales, los cuales se estipularon con la participación de la propia fiadora, no puede sostenerse, como indica la mayoría, que en el presente caso no ocurrió una novación modificativa, pues ésta no puede quedar al arbitrio de una sola de las partes, es decir, de Bayamón Steel.

Ante la compatibilidad entre ambos mecanismos de aseguramiento y siguiendo el principio a los efectos que los contratos de fianza deben ser interpretados liberalmente, sostenemos, contrario a lo resuelto por la mayoría del Tribunal, que en el presente caso la obligación de United experimentó una novación modificativa y, por ende, está obligada a satisfacer los daños y perjuicios ocasionados con el embargo preventivo y la prohibición de enajenar. En consecuencia, entendemos que erró el Tribunal de Circuito al limitar la responsabilidad de la fiadora a los daños provocados por el embargo preventivo.

United otorgó un contrato en términos generales donde se obligó a garantizar los daños y perjuicios ocasionados por el aseguramiento. Además de esa voluntad expresada en el contrato, debe tomarse en consideración la norma reiterada a los efectos que los contratos de fianza deben ser interpretados liberalmente. De lo contrario, las compañías fiadoras fácilmente evadirían las obligaciones contraídas con sus clientes. Una compañía que se

dedica al lucrativo negocio de prestar fianzas judiciales debe ser más cautelosa al otorgar un contrato en términos tan amplios, porque luego no puede ampararse en que no prestó su consentimiento para modificar una obligación que, a todas luces, persigue el mismo propósito que la obligación original y es complementaria a ésta. La decisión que hoy omite la mayoría del Tribunal no ha tomado en consideración los anteriores factores.

IV

Por los fundamentos antes expuestos, revocaríamos la sentencia emitida por el Tribunal de Circuito de Apelaciones e impondríamos a United la obligación de pagar los daños y perjuicios ocasionados por el embargo preventivo y la prohibición de enajenar, según fueron computados por el Tribunal de Primera Instancia.


MIRIAM NAVEIRA MERLY
Jueza Presidenta