TEXTO COMPLETO DE LA SENTENCIA
El 4 de agosto de 2009, Isza Beach Development, S.E., Neftalí Lluch García y su esposa, Haydee Cuesta Barro, y la sociedad legal de gananciales por ambos compuesta, e Isza Beach Development Corp. (respectivamente, Isza SE, Sr. Lluch, e Isza Corp.; conjuntamente, Apelante/Apelado) presentaron recurso de apelación (KLAN-2009-01070), sobre la Sentencia que dictó el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI), el 9 de junio, la cual se notificó el 11 de junio de 2009.
De la referida Sentencia, el 12 de agosto de 2009, también apelaron (KLAN-2009-01113) Rolando Zamora y su esposa, María Candal Torres, y la sociedad legal de gananciales por ambos compuesta, y Juan Isla Pérez y su esposa, Verónica Guzmán González, y la sociedad legal de gananciales por ambos compuesta (Zamora-Isla o Apelados/Apelantes).
Consolidamos ambos recursos de apelación y a ambas partes apeladas le ordenamos que se expresaran. El Apelante/Apelado presentó su alegato en oposición al KLAN-2009-01113. Por su parte, los Apelados/Apelantes no comparecieron en el KLAN-2009-01070, dentro del término ordenado, ni en el plazo reglamentario. Consecuentemente, damos la causa por sometida, sin el beneficio de su alegato. [1]
*1191 Luego de examinar los hechos pertinentes, y analizar el Derecho aplicable, resolvemos confirmar la apelada Sentencia.
I
A continuación hacemos un breve recuento de los hechos y las obligaciones pertinentes a la controversia que nos ocupa, todos los cuales surgen tanto de los documentos anejados a los recursos apelativos, como de las alegaciones y admisiones de ambas partes.
Tanto Isza Corp. como Isza SE fueron originalmente creadas por los Zamora-Isla.
El 17 de julio de 1981, mediante Escritura Pública Número 15, Isza Corp. adquirió de la Sucesión Rodríguez un terreno de 2,963.24 metros cuadrados sito en Guánica. (Apéndice del Apelante/Apelado. páginas 198-208). Tiempo luego, los Zamora-Isla gestionaron planos y permisos para desarrollar un condominio residencial en el terreno de Isza Corp. En mayo de 1994, se otorgaron varios contratos con relación al terreno, y el desarrollo del condominio.
Mediante Escritura Pública Número 22, del 17 de mayo de 1994, Isza SE devolvió a Isza Corp. las mil acciones que antes había adquirido, a cambio del título del terreno en Guánica. (Apéndice del Apelante/ Apelado, páginas 209-213).
Mediante Escritura Pública Número 24, el 24 de mayo de 1994, Isza SE otorgó una hipoteca sobre el terreno en Guánica, en garantía de un pagaré al portador por $140,000. En esta escritura, se pactaron intereses sobre el principal hasta el saldo, aún en caso de mora. (Apéndice del Apelante/Apelado. páginas 218-230).
El 25 de mayo de 1994, por Escritura Pública Número 25, el Sr. Lluch adquirió de los Zamora-Isla, su participación en Isza SE, 98%, por $95,000. (Apéndice del Apelante/Apelado. páginas 214-217).
En esa fecha igualmente, los Zamora-Isla, mediante Contrato de Venta de Acciones, le vendieron al Sr. Lluch, cada uno, veinticinco (25) acciones, para un total de cincuenta (50) acciones, las cuales eran las únicas acciones en circulación de Isza Corp. (Apéndice del Apelante/Apelado. págs. 231-232).
También el 25 de mayo de 1994, Isza SE, por conducto de su administrador Isza Corp., representada por el Sr. Lluch, otorgó un Contrato Privado en el que adquirió de Zamora-Isla los planos y permisos que éstos habían gestionado para el desarrollo de un condominio en Guánica. Apéndice del Apelante/Apelado, páginas 233-236. En dicho contrato, las partes acordaron lo siguiente.
“Primero: Los Vendedores [Zamora-Isla] son dueños en partes iguales de un conjunto de planos preparado [s] por Juan Torres Lao para la construcción de un proyecto de viviendas bajo el régimen de propiedad horizontal y de los permisos y autorizaciones emitidas por la Junta de Planificación y la Administración de Reglamentos y Permisos. También generaron la idea del provecto que lleva los números AAA-u-89-29-01. 86-59-E-217 PPA. CONSULTA No. 86-59-0551-JPU, Cod. No. 59-428-087-13-01-001. Esta propiedad se identifica como los planos.
Segundo: Isza [SE] es dueña de la propiedad inmueble sobre la cual se desarrollará el proyecto de viviendas a que se hace referencia en el párrafo primero, que está ubicada en Playa Santa, Guánica, Puerto Rico.
Tercero: Isza adquiere los planos bajo los siguientes términos:
a. Pagará por la suma en efectivo de $140,000.00 que se representa como un pagaré al portador. El primer pago de $100,000.00 se hará el 30 de enero de 1995 y el segundo de $40,000.00 el 30 de junio de 1995 sin *1192 intereses. Estas cantidades se dividirán por partes iguales entre Isla y Zamora. El pagaré hipotecario se retiene en concepto de prenda.
b. Entregará como dación en pago tres apartamentos a Isla y tres apartamentos a Zamora del proyecto de vivienda descrito en el primer párrafo. Los apartamentos son los siguientes: para Isla los números 601, 201, 202; para Zamora los número 604, 209, 210. La transferencia se hará a base del precio de construcción que se estima a base de $50,000.00 por apartamento.
Cuarto: Isza [SE] se obliga a construir el proyecto de vivienda y para tales fines defenderá los permisos existentes y gestionará el financiamiento. En caso de que el proyecto no se construya dentro de un período razonable, que se estima en un año, por cualquier condición atribuible a Lluch, los vendedores [Zamora-Isla] podrán exigir el pago de las sumas aquí pactadas, a saber $140,000.00 y el valor de construcción de los seis apartamentos a base de $50,000.00 cada uno, y además, una liquidación de daños que se fija en $360,000. Esta última suma es una penalidad.
Debe entenderse que Isza [SE] no tiene la opción de escoger entre los apartamentos y el pago de dinero. El reclamo del dinero es una opción disponible a los vendedores [Zamora-Isla] en caso de que Isza [SE] no construya el edificio no imputable a ella de la revocación de los permisos, de apartamentos en el plazo estimado por causas distintas a la revocación.
Quinto: Isza [SE] se compromete a establecer el régimen de propiedad horizontal en un plazo de 45 días a partir de la firma de este contrato y a individualizar los apartamentos aquí señalados tan pronto sea legalmente posible. Los apartamentos se construirá[n] y tendrá[n] todos los equipos y características contempladas para la totalidad del proyecto.
Sexto: Los vendedores [Zamora-Isla] reconocen que la consulta de ubicación que da lugar a todos los permisos ha sido cuestionada judicialmente. Si este recurso judicial o cualquier causa ajena a la voluntad de Lluch interfiere con los permisos del proyecto, las obligaciones de Isza [SE] para con los vendedores [Zamora-Isla] quedan suspendidas mientras perduren las interferencias. Si al momento de ser exigibles las obligaciones los permisos están vigentes, se procederá conforme a lo aquí acordado.
Isza [SE] se compromete a ajustar todos los recursos legales para combatir cualquier interferencia y en caso de que se restituyan los permisos se restaurarán las obligaciones. (Subrayado nuestro) /Apéndice del Apelante/Apelado. págs. 233-234)
En la misma fecha, el Sr. Lluch suscribió una Garantía Personal por $800,000, a favor de los Zamora-Isla, por las reclamaciones judiciales que contra Isza SE se pudieran presentar. Id., página 236.
Pocos meses después, el 22 de diciembre de 1994, la extinta Unidad Especial de Jueces de Apelaciones dictó Sentencia en el caso Winston De Feria v. Junta de Planificación, JAC1993-0544, en la cual declaró nulos los permisos (86-59-551-JPU) que Isza SE había adquirido de los Zamora-Isla. /Apéndice del Apelante/ Apelado, páginas 11-65).
Transcurridos aproximadamente diez años, el 21 de julio de 2005, el Apelante/Apelado presentó demanda (JPE2005-0579) sobre sentencia declaratoria, interdicto, daños y perjuicios, y consignación, contra los Zamora-Isla. /Apéndice del Apelante/Apelado. páginas 1-7). En síntesis, reclamaron los demandantes la devolución y cancelación del pagaré hipotecario que habían otorgado por la compraventa de los permisos y planos en el Contrato Privado.
Seguidamente, el 22 de julio de 2005, los Zamora-Isla presentaron demanda (JAC2005-0635) sobre *1193 incumplimiento de contrato, cobro de dinero, ejecución de hipoteca, y daños y perjuicios, contra el Apelante/ Apelado. (Apéndice del Apelante/Apelado. páginas 66-76). Reclamaron los demandantes el cumplimiento específico del Contrato Privado, incluso la entrega de seis apartamentos y la activación de la cláusula penal sobre daños.
Ambas demandas versan sobre la validez del Contrato Privado entre las partes, a la luz de la Sentencia del 22 de diciembre de 1994, en el caso Winston De Feria v. Junta de Planificación.
Luego de ambas partes demandadas presentar sus contestaciones, así como reconvenciones, el Tribunal de Primera Instancia consolidó las causas. Ambas partes presentaron mociones de sentencia sumaria. El Sr. Lluch y demás codemandantes presentaron su moción el 2 de septiembre de 2005. (Apéndice del Apelante/Apelado. páginas 96-111). El 25 de enero de 2008, los Zamora-Isla presentaron su oposición a dicha solicitud y a su vez pidieron al foro primario que dictara sentencia sumaria a su favor. íd., páginas 178-197. Por su parte, el Apelante/Apelado replicó el 12 de septiembre de 2008. íd., páginas 259-269.
En sus mociones de sentencia sumaria, cada parte expresó puntillosamente los mismos argumentos ante nos esbozados.
Según expresa en su Sentencia el Tribunal de Primera Instancia, y como lo manifiestan las partes en sus escritos, tanto ante el foro primario como ante nos, los hechos materiales a la causa no están en controversia, por lo que sólo resta resolver controversias de Derecho.
El 9 de junio de 2009, notificada el día 11 del mismo mes, el foro de instancia dictó la Sentencia aquí apelada, en la cual declaró HA LUGAR la primera causa de acción incluida la demanda de cobro de dinero incoada por los Zamora-Isla en el Caso Civil JAC2005-0635, y la primera causa de acción incluida en la reconvención de éstos en el Caso Civil JPE2005-0579. El Tribunal de Primera Instancia ordenó al Sr. Lluch y demás demandantes en el Caso Civil JPE2005-0579 pagar solidariamente a los Zamora-Isla $140,000 más intereses de conformidad con el pagaré otorgado. Denegó el foro primario el reclamo de entrega de seis (6) apartamentos, tres (3) al Sr. Isla, y tres (3) al Sr. Zamora, o el valor de $50,000 por cada uno. El foro de instancia además declaró improcedente la activación de la cláusula penal por incumplimiento contractual reclamada por los Apelados/Apelantes en el Caso Civil JAC2005-0635, pues el proyecto de construcción se detuvo mediante orden judicial y no por razones atribuibles al Sr. Lluch y los demandados. En su Sentencia, el Tribunal de Primera Instancia también declaró NO HA LUGAR la solicitud de sentencia declaratoria en el Caso Civil JAC2005-0579, y la reconvención en el Caso Civil JAC2005-0635 (ambas sobre nulidad de contrato).
El 22 de junio de 2009, los Zamora-Isla presentaron Moción de Determinaciones de Hechos Adicionales y Solicitud de Reconsideración, a la cual se opuso el Apelante/Apelado. Luego de acoger la solicitud de reconsideración, el TPI declaró no ha lugar tanto la reconsideración como las determinaciones de hechos adicionales, lo cual notificó el 16 de julio de 2009. (Apéndice del Apelante/Apelado, páginas 284-312).
El 4 de agosto de 2009, Lluch y esposa, Isza SE, e Isza Corp., presentaron recurso de apelación (KLAN-2009-01070), en el cual consignaron los siguientes errores:
“Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Ponce, al condenar a la parte apelante a pagar la suma de $140,000.00 más intereses a base de un contrato carente de objeto y causa y por ende, nulo; lo que supone la no exigibilidad del pagaré y sus intereses moratorios.
Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Ponce, al condenar a la apelante a pagar la suma de $140,000.00 más intereses a pesar de que el contrato, asumiendo únicamente para fines de análisis que fuera válido, lo que negamos, impedía el reclamo contra los apelantes.
*1194 Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Ponce, al condenar a los apelantes al pago de intereses a pesar de que la inexistencia de mora culpable de éstos y/o al no moderar los mismos.”
El 12 de agosto de 2009, los Zamora-Isla apelaron (KLAN-2009-01113) la misma Sentencia, amparados en los siguientes señalamientos de error:
“Erró el Tribunal de Primera Instancia al declarar no ha lugar la moción de determinaciones de hechos adicionales y solicitud de reconsideración.
Erró el Honorable Tribunal de Primera Instancia al resolver que el proyecto de vivienda no se construyó por causas no atribuibles a Lluch.
Erró el Tribunal de Primera Instancia al resolver que no procede el pago de las sumas correspondientes al valor de construcción de seis apartamentos a base de $50,000.00 cada uno ($300,000.00) y una liquidación de daños que se fija en $360,000.00 como penalidad más los intereses devengados según pactados en el pagaré.”
El 24 de agosto de 2009, se le ordenó a los Apelados/Apelantes expresarse sobre el KLAN-2009-01070, lo cual al presente no han hecho. A pesar de que no han presentado su alegato, en incumplimiento con nuestra Regla 22, 4 L.P.R.A. Ap. XXII-B, y con nuestra orden del 24 de agosto, damos por sometida la causa sin el beneficio de su comparecencia.
Más adelante, mediante Resolución del 8 de octubre de 2009, ordenamos: la consolidación de ambos recursos, y que se expresara el Apelante/Apelado sobre el KLAN-2009-01113. Éste presentó su alegato en oposición el 27 de octubre de 2009, con lo cual, quedó perfeccionada la causa.
II
Para resolver la controversia ante nos, debemos visitar el Derecho sobre contratos y sentencia sumaria.
Nuestro derecho contractual está cimentado en el principio de la autonomía de la voluntad y la libertad de contratación. Arthur Young & Co. v. Vega III, 136 D.P.R. 157, 169-170 (1994); Guadalupe Solis v. González Durieux, res. el 10 de diciembre de 2007, 2008 JTS 7, proveyendo para que las partes contratantes establezcan los pactos, cláusulas y condiciones que tengan por convenientes, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. Véase 31 L.P.R.A. See. 3372.
Es norma firmemente establecida en nuestra jurisdicción que los contratos tienen fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento, cada contratante se obliga, “no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley”. 31 L.P.R.A. See. 3375. Lo anterior se conoce como la doctrina de pacta sunt servanda que implica la obligatoriedad de los contratos según sus términos y las consecuencias necesarias derivadas de la buena fe. Véase 31 L.P.R.A. Sees. 2994 y 3372 y 3375; Banco Popular de P.R. v. Sucesión Talavera, res. el 31 de julio de 2008, 2008 JTS 152; Corporación del Fondo del Seguro del Estado v. Unión de Médicos de la C.F.S.E., 170 D.P.R. 443 (2007).
Un contrato existe a partir de la concurrencia de los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato, y (c) causa de la obligación que se establezca. 31 L. P.R.A. Sees. 3451 y 3391; Díaz Ayala et al. v. E.L.A., 153 D.P.R. 675, 690-691 (2001). Así, son obligatorios los contratos, “cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez”. 31 L.P.R.A. See. 3451. En lo relacionado con el objeto de los contratos, nuestro Tribunal Supremo ha establecido que son “las cosas o servicios que son materia, respectivamente, de las obligaciones de dar o de hacer”. S.J. Credit, Inc. v. Ramírez, 113 D.P.R. 181, 185 *1195 (1982). Así, “[e]l objeto de todo contrato debe ser una cosa determinada en cuanto a su especie”. 31 L.P.R.A. See. 3423. De otro lado, “la causa en los contratos es la razón o fin, o sea, el porqué de la obligación”. S.J. Credit, Inc. v. Ramírez, supra, pág. 186. Según Manresa, la causa en los contratos no se refiere a las motivaciones iniciales que tuvieron los contratantes al momento de suscribir el contrato, sino al fin ulterior que los motivó para establecer las prestaciones y contraprestaciones de las cosas o servicios concernidos. J. M. Manresa, Código Civil Español, 6ta ed., 1967, T. VIII, Vol. 2, pág. 624.
El consentimiento de las partes contratantes, cuya capacidad se presume, emana del pacto, “se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato”. 31 L.P. R.A. 3401.
Precisa recordar que los contratos pueden contener múltiples obligaciones las cuales pueden ser de distintas clasificaciones. En lo pertinente, las obligaciones pueden ser principales o accesorias. Las obligaciones principales son la causa o razón por la cual las partes se obligan. Las accesorias son aquellas que aunque obligan, no son la razón del vínculo. La importancia de esta distinción estriba en que el incumplimiento de la obligación principal conlleva su resolución, lo que necesariamente no ocurre con el incumplimiento de las obligaciones accesorias, salvo pacto en contrario. Ramírez Anglada v. Club Cala, 123 D.P.R. 339 (1989). El incumplimiento de una obligación recíproca conlleva un efecto resolutorio, siempre que la obligación incumplida sea una esencial o que su cumplimiento constituya el motivo del contrato para la otra parte. NECA Mortgage Corp. v. A&W Dev., S.E., 137 D.P.R. 860, 875 (1995).
La exigencia de que la obligación incumplida sea la principal responde a un interés superior, acorde con el principio de la buena fe, de evitar el abuso en el ejercicio de las acciones resolutorias, promover el cumplimiento de los contratos e impedir que, a través de una infracción menor, una de las partes trate de liberarse del vínculo porque ya no le conviene o no le interesa. Los tribunales deberán tener bien presente que el Art. 1077 del Código Civil, supra, dispone que el tribunal decretará la resolución si no existen causas justificadas que le autoricen para señalar un plazo. íd., páginas 875-876.
Asimismo las obligaciones, tanto principales como accesorias, pueden clasificarse, entre otras, como condicionales, cuando su cumplimiento depende de la ocurrencia o no ocurrencia de un hecho incierto. A su vez, las obligaciones condicionales pueden designarse como suspensivas o resolutorias. Las suspensivas son aquéllas cuyo cumplimiento depende de un hecho futuro o pasado. El cumplimiento de las resolutorias culmina una vez ocurre el hecho. Si se incumple la condición suspensiva, el nexo contractual desaparece, y por lo tanto, no es exigible la obligación. Véase 31 L.P.R.A. Sees. 3042-3052.
Un ejemplo de una obligación accesoria condicional suspensiva es la cláusula penal. Ésta depende de la existencia de una obligación principal, y si se pacta adecuadamente, se activa si una parte contratante incumple con su obligación principal. Véase 31 L.P.R.A. Secs. 3131-3134.
Entre las formas de extinción de las obligaciones, figura la novación extintiva.
Es norma claramente establecida en nuestro ordenamiento que la novación es una causa de extinción de las obligaciones. Art. 1110 Cód. Civ. P.R., 31 L.P.R.A. see. 3151. No obstante, hemos reconocido que la novación incluye tanto la modalidad que tiene efectos extintivos, como la novación modificativa en virtud de la cual subsiste una obligación alterada. Véanse, Municipio de San Juan v. Professional, 2007 JTS 101, res. 18 de mayo de 2007, 171 D.P.R._; United Surety v. Villa, 161 D.P.R. 618 (2004); Miranda Soto v. Mena Eró, 109 D.P.R. 473, 478 (1980). La novación extintiva se configura cuando las partes lo declaran en forma terminante o cuando la intención de novar se deriva de la incompatibilidad absoluta entre la obligación original y la nueva. Artículo 1158, Código Civil, 31 L.P.R.A. see. 3242. G. & J., Inc. v. Doré Rice Mill, Inc., 108 D.P.R. 89, 91 (1978). De otra parte, se concreta la novación modificativa de una obligación cuando no exista la intención de *1196 extinguir una obligación y sustituirla por otra, o cuando medie compatibilidad entre la obligación original y la nueva. United Surety v. Villa, supra, pág. 619. El comentarista Manuel Albaladejo indica que cuando quede patente el ánimo de cambio pero no conste "la voluntad de que una [obligación] se extinga y otra nazca, entonces se entiende que subsiste la misma obligación, pero modific[ada]". M. Albaladejo, Derecho Civil, 8va ed, Barcelona, Bosch, 1989, T. II, Vol. 1, pág. 339. En modo análogo, postula Antonio Hernández Gil que "[l]a novación meramente modificativa, en cuanto a su constitución, se rige por las reglas generales de la exteriorización e interpretación de la voluntad, no requiriéndose, por lo tanto, un particular animus novandi." A. Hernández Gil, El ámbito de la novación objetiva modificativa, 45 Revista de Derecho Privado, 51, pág. 801 (1961).
El animus novandi es elemento indispensable de la novación extintiva. Municipio de San Juan v. Professional, supra. Se trata de la declaración expresa, terminante que el Artículo 1158 del Código Civil exige para extinguir una obligación. P.D.C.M. Associates, S.E. v. Najul Bez, res. 7 de agosto de 2008, el 2008 JTS 153
De otra parte, de conformidad con las disposiciones de la Regla 36 de las de Procedimiento Civil, 32 L.P.R. A. Ap. Ill, R. 36, procederá dictar sentencia sumaria cuando de los documentos que acompañan la solicitud surja que no existe disputa o controversia sobre algún hecho esencial, sino que tan sólo resta aplicar el Derecho. Véase Audiovisual Language v. Sistema de Estacionamiento Natal, 144 D.P.R. 563 (1997). Siendo éstas las circunstancias del caso ante un tribunal, podrá entonces disponerse del asunto por la vía sumaria sin tener que entrar en un juicio y someter a las partes a los rigores que ello acarrea. Véase Rosario Ortiz v. Nationwide Insur. Co., 158 D.P.R. 775 (2003).
La sentencia sumaria es un mecanismo procesal de carácter discrecional que únicamente se concederá en aquellos casos en que la evidencia que se presente con la moción establezca con claridad la existencia de un derecho. Únicamente debe ser dictada una sentencia sumaria en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos materiales y pertinentes. Véase PFZ Properties, Inc. v. General Accident, 136 D.P.R. 881 (1994); Corp. Presiding Bishop v. Purcell, 117 D.P.R. 714 (1986). La sentencia sumaria sirve el propósito de facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales y que, por tanto, no ameriten la celebración de un juicio en su fondo. Véase Vera Morales v. Bravo Colón, 161 D.P.R. 308 (2004); PFZ Properties, Inc. v. General Accident, supra; Hernández v. Hernández, 150 D.P.R. 171 (2000).
Es por lo anterior que, como foro apelativo, debemos cerciorarnos de que al dictar sentencia sumaria el tribunal sentenciador hizo lo siguiente: (1) analizar los documentos que acompañan la moción solicitando sentencia sumaria, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Vera Morales v. Bravo Colón, supra; PFZ Properties v. General Accident, supra.
Para derrotar una solicitud para que se dicte sentencia sumariamente, la parte opositora deberá presentar declaraciones juradas, y cualquier documento que ponga en controversia los hechos materiales presentados por el promovente de la solicitud. Véase Vera Morales, supra. Si se cruza de brazos, correrá el riesgo de que le dicten sentencia en su contra sin que se celebre un juicio plenario. Sin embargo, el simple hecho de no oponerse con evidencia que controvierta la presentada por el promovente no implica que necesariamente proceda la sentencia sumaria o que el promovente tenga derecho a que se dicte a su favor. Corp. Presiding Bishop v. Purcell, supra. Como hemos visto, sólo procede resolver sumariamente, si luego de un ponderado análisis del expediente, el foro juzgador entiende que tiene ante sí toda la verdad del caso.
En lo que respecta al Derecho Apelativo, a pesar de que como norma general, hemos sido consistentes en *1197 que le brindaremos deferencia a la apreciación de la prueba, debemos tener presente que estamos en igual posición que el TPI para evaluar prueba documental. Rivera Torres v. Pan Pepin, Inc., 161 D.P.R. 681 (2004); Trinidad García v. Chade, 153 D.P.R. 280 (2001); Moreda Toledo v. Rosselli, 150 D.P.R. 473 (2000).
III
El presente recurso consolidado precisa que resolvamos si procedió conforme a Derecho el TPI al dictar sentencia sumaria mediante la cual declaró HA LUGAR la primera causa de acción incluida en demanda de cobro de dinero de los Zamora-Isla, así como, la primera causa de acción de la reconvención presentada en el pleito incoado por el Sr. Lluch. Luego de exhaustivamente estudiar los legajos, opinamos que la Sentencia del TPI es correcta en Derecho.
En apretada síntesis, tenemos ante nos varios contratos entre los Zamora-Isla, Isza SE, Isza Corp. y el Sr. Lluch, partes experimentadas en los negocios de desarrollo de terrenos y consultas de ubicación. Los acuerdos entre las partes contienen tanto obligaciones principales y accesorias como condiciones suspensivas. Para resolver la controversia ante nuestra consideración, atendemos particularmente la validez y la obligatoriedad del Contrato Privado mediante el cual los Zamora-Isla le vendieron a Isza SE, representada por Isza Corp. y ésta a su vez representada por el Sr. Lluch, los planos y permisos para el desarrollo de un condominio residencial.
La tésis central del Sr. Lluch, es que el Contrato Privado es nulo, o en la alternativa, si se entiende que es válido, su interpretación lo libera de toda obligación respecto a los Zamora-Isla. Sostiene que al invalidarse los permisos, objeto del Contrato Privado, se novó la obligación y se extinguió, por lo cual, resultaba ineficaz el pacto, e inexigible la prestación. No obstante, el Apelante/Apelado está de acuerdo con parte de la Sentencia del TPI, en tanto, denegó la reclamación de los Zamora-Isla sobre el valor de seis apartamentos y una suma correspondiente a daños. Añade el Sr. Lluch que los intereses por mora no proceden, o en la alternativa, hay que reducirlos. Arguye que el tiempo transcurrido entre el contrato y el cumplimiento de su obligación de desarrollar un condominio, es atribuible a la paralización del desarrollo por orden judicial, así como a la eventual anulación de los permisos, lo cual colige es culpa de los Apelados-Apelantes. Indica el Apelante/Apelado que la anulación de los permisos fue la causa de paralización involuntaria, y por tanto produjo la mora en el cumplimiento por parte del Apelante/Apelado.
Los argumentos del Apelante/Apelado no proceden en estricto derecho. En primer lugar, el Contrato Privado es válido porque concurrieron todos los elementos necesarios para su perfeccionamiento: objeto, consentimiento y causa. En segundo lugar, no se puede argüir la novación extintiva del Contrato Privado a raíz de la anulación de los permisos adquiridos por Isza SE. Y como veremos más adelante, los intereses por mora fueron válidamente pactados, por lo cual, procede su imposición, pues Isza SE no pagó oportunamente el precio de la compraventa de los planos y permisos.
En cuanto a los tres elementos necesarios para el perfeccionamiento del contrato, nos referimos a éstos con atención a la obligación principal. El objeto del Contrato Privado para Isza SE fue la adquisición de los permisos y planos, los cuales conocía que estaban siendo impugnados en el Tribunal, y aún así, asumió dicho riesgo. Para los Zamora-Isla, el objeto fue el dinero ($140,000) que recibirían a cambio de la venta de los permisos y planos. El consentimiento de ambas partes quedó indubitadamente plasmado en el contrato; su capacidad para consentir no está en controversia. La causa para Isza SE, era la titularidad de los permisos y planos, mientras que para los Zamora-Isla, era el traspaso de la titularidad de los planos y permisos.
La obligación principal contenida en el Contrato Privado es una pura en donde el cumplimiento y el perfeccionamiento ocurren prácticamente de modo simultáneo. Aunque no tiene condiciones, las demás obligaciones son accesorias condicionales suspensivas: el desarrollo del condominio residencial; la dación en pago de 6 apartamentos; y la cláusula penal.
*1198 El Apelante/Apelado insiste, tanto en su apelación, como en su oposición al recurso de los Zamora-Isla, que en vista de que los permisos objetos del Contrato Privado fueron declarados nulos el contrato carecía de objeto por lo cual era inválido y no podían exigirse las contraprestaciones y añade que al ser ilícita la causa, el contrato es ineficaz. Tal planteamiento es errado, pues al momento de las partes otorgar el Contrato Privado, los permisos existían y se estaban cuestionando ante el Tribunal, hecho conocido por ambas partes. Aún así, Isza SE decidió adquirirlos, por lo que asumió un riesgo sin dudas conocido.
Ambas partes reconocieron explícitamente en el Contrato Privado, que los permisos estaban siendo impugnados en el Tribunal, y no condicionaron la transacción de compraventa a la validez de los mismos. Según vimos, la compraventa de los permisos es la obligación principal. Como obligaciones accesorias en el Contrato Privado, figuran: el desarrollo del condominio residencial a base de los permisos adquiridos; la remuneración adicional a los Zamora-Isla, consistente en 6 apartamentos o el valor de $50,000 por cada uno; y la cláusula penal en caso de incumplimiento voluntario por parte de Isza SE. De estas obligaciones accesorias, la pertinente al desarrollo del condominio, es una obligación suspensiva, cuyo cumplimiento depende de un hecho futuro incierto (la validez de los planos y permisos). Si no ocurre dicho hecho, cesa la obligación, pero sólo cesa dicha obligación accesoria condicional suspensiva, no la principal. Esto fue lo que precisamente ocurrió. Al declararse nulos los planos y permisos, resultó imposible su utilización para el desarrollo del condominio, por lo que cesó la obligación de Isza SE de llevar a cabo el proyecto, así como de pagar la compensación adicional de 6 apartamentos a los Zamora-Isla. Tampoco puede activarse la cláusula penal de daños, pues la misma sólo contempla un acto voluntario, y según explicamos, la imposibilidad de la utilización de los planos y permisos no es atribuible a Isza SE, sino que se debió a que por vía judicial fueron declarados nulos. Incluso, según pactado, Isza SE defendió los permisos en el Tribunal.
De otra parte, no procede aludir a la doctrina de novación extintiva, puesto que en los hechos ante nos no surge el animus novandi de extinguir la obligación principal, y tampoco puede ésta extinguirse por alteraciones o cambios en las obligaciones accesorias. P.D.C.M. Associates, S.E. v. Najul Bez, supra.
El Apelante/Apelado, en su tercer señalamiento de error, discute que la sexta cláusula del Contrato Privado, no admite que corran intereses por mora mientras perduren las interferencias con la validez de los permisos, pues ello impediría el cumplimiento con lo pactado. Discute que sólo es responsable por intereses por mora, el culpable de la mora. Pierde de perspectiva el Sr. Lluch que los intereses consignados en el pagaré (Apéndice del Apelante/Apelado. páginas 221-222 y 230) fueron pactados para satisfacerse hasta que se saldara el precio de $140,000, “aun en caso de mora”. El Sr. Lluch incurrió en mora cuando se negó a pagar el precio de la obligación principal válida: la compraventa de los permisos y planos.
Por su parte, los Zamora-Isla arguyen que aunque las partes otorgaron varios contratos (seis), en realidad se trata de una sola obligación, un sólo contrato, que se bifurcó para fines prácticos de notaría. Añaden que el precio de $140,000, correspondía no sólo a los permisos y planos, sino también al terreno y al proyecto de desarrollo. No le asiste la razón a los Apelados/Apelantes. Según ya discutido, el desarrollo del condominio constituyó una obligación accesoria cuya condición suspensiva no se cumplió por causas ajenas a los contratantes, por lo cual, dicho incumplimiento no es atribuible a ninguna de las partes. El argumento de que se trataba de un sólo contrato es inconsecuente, pues según ya vimos, estamos ante varias obligaciones de distintas clasificaciones, por lo que el cumplimiento de éstas se podía dar de modo independiente sin importar si dichas obligaciones estaban consignadas en uno o varios contratos.
Es imperioso tener presente que las partes contratantes, tanto el Sr. Lluch en representación de Isza Corp. e Isza Beach, como los Zamora-Isla, no son neófitos en los negocios en controversia sobre desarrollo de terrenos y consultas de ubicación. Así no pueden alegar teorías de Derecho inaplicables, ni menos que desconocían los efectos que tendría lo pactado. Sencillamente, la obligación principal pactada por ellos, la compraventa de los permisos y planos, es una independiente, y cuyo perfeccionamiento y cumplimiento no *1199 dependía de las demás obligaciones accesorias condicionales sobre el desarrollo del condominio.
Por último, recordemos que “los contratos, más allá de ser la expresión de la autonomía y libertad de la persona, son también instrumentos de justicia distributiva y de interés social”. (Subrayado nuestro) Banco Popular de P.R. v. Sucesión Talavera, supra. Compete a los Tribunales velar porque las obligaciones pactadas se cumplan al amparo del Derecho.
Por todo lo antes esbozado, y porque de un examen de las solicitudes de sentencia sumaria de las partes, así como de los documentos en los expedientes, surge que no hay controversia sobre los hechos materiales, procedía dictar sentencia sumaria sosteniendo la obligación principal del Contrato Privado, como correctamente hizo el Tribunal de Primera Instancia.
IV
En virtud de todo lo anteriormente expresado, confirmamos la Sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria.
Dimarie Alicea Lozada
Secretaria Tribunal de Apelaciones
ESCOLIO 2010 DTA 64

. El expediente de epígrafe fue asignado a la Jueza Ponente, mediante la Orden Número OAT-2010-4 del 13 de enero de 2010.