Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JAMPIERRE LEGRAND LÓPEZ, ELVIRA ORTIZ Y OTROS<br><br>APELANTES<br><br>v<br><br>BANCO COOPERATIVO DE PUERTO RICO, ORIENTAL BANK<br><br>APELADOS | KLAN202500076 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2023CV05270<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 24 de marzo de 2025.

## I.

El 3 de febrero de 2025, el señor Jampierre Legrand López, la señora Elvira López Ortiz y la Sociedad Legal de Gananciales compuesta por ambos (matrimonio Legrand-López o apelantes) presentaron un *Recurso de apelación* en el que solicitaron que revoquemos una *Sentencia parcial* emitida, notificada y archivada digitalmente en autos por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario), el 3 de enero de 2025.[1] En el dictamen, el TPI desestimó, con perjuicio, una *Demanda* promovida por el matrimonio Legrand-López en contra de Oriental Bank y el Banco Cooperativo de Puerto Rico (en conjunto, parte apelada) en reclamo de incumplimiento de contrato y sentencia declaratoria sobre una hipoteca pactada entre las partes. Determinó continuar con la reconvención presentada por la parte apelada y

---
[1] Apéndice del *Recurso de apelación*, Anejo 19, págs. 265-273.

ordenó el referido a mediación para dilucidar el incumplimiento del pago según acordado.

El 5 de febrero de 2025, emitimos una *Resolución* en la que le concedimos a la parte apelada hasta el 5 de marzo de 2025 para presentar su alegato en oposición.

El 5 de marzo de 2025, Oriental Bank y el Banco Cooperativo de Puerto Rico radicaron un *Alegato en oposición* en el que solicitaron que confirmemos la *Sentencia parcial* apelada.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el *Recurso de apelación.* En adelante, pormenorizamos los hechos procesales más importantes para su atención.

**II.**

El caso de marras tiene su génesis el 31 de mayo de 2023 cuando el matrimonio Legrand-López presentó una *Demanda* sobre incumplimiento de contrato y sentencia declaratoria en contra de Oriental Bank y el Banco Cooperativo de Puerto Rico (Bancoop).[2] En ella, alegaron que:

1. Eran dueños de un inmueble situado en Río Piedras, Puerto Rico, adquirido mediante una Escritura de compraventa Núm. 544, otorgada el 1 de junio de 2007 ante el notario Juan A. Morales Serrano.
2. En esa misma fecha, otorgaron una Hipoteca en garantía de pagaré, Escritura Núm. 545 ante el mismo notario a favor de R-G Premier Bank of Puerto Rico, o a su orden, por $408,500.00.
3. En el 2011, refinanciaron la propiedad con Scotiabank como agente de servicios de Bancoop.
4. El 31 de mayo de 2013, otorgaron junto a Bancoop una *Escritura sobre ampliación y modificación de hipoteca Núm. 131* ante la notario Ana E. Gorbea Padró con el propósito de modificar la hipoteca inscrita sobre la propiedad.
5. Como parte de la modificación, el nuevo principal a pagar sería $433,500.00 y devengaría un interés de 4% por 36 meses desde el 1 de junio de 2013.
6. Entretanto, Bancoop se reservaba la facultad de modificar el interés a pagar aumentándolo a:
   a. 5% al transcurrir 36 meses durante 12 meses;
   b. 6% a partir del 1 de junio de 2017 durante 12 meses.
   c. 7% a partir del 1 de junio de 2018 durante el término restante de la hipoteca.

---

[2] Íd., Anejo 1, págs. 1-8.

7. Bancoop no ejerció su derecho de aumentar el interés de la hipoteca.
8. Del 1 de junio de 2013 hasta el 1 de marzo de 2023, realizaron pagos mensuales de hipoteca ascendentes a $2,070.15.
9. Oriental Bank adquirió a Scotiabank, pero no era el tenedor del pagaré hipotecario o, de serlo, estaba obligada a respetar el acuerdo e impedida a incrementar unilateralmente el interés de la deuda.
10. A finales de 2022, Oriental Bank les informó que debían pagar intereses adeudados de la hipoteca.
11. El 27 de marzo de 2023, Oriental Bank les requirió mediante carta el pago de $39,000.00 por concepto de intereses adeudados desde el 1 de junio de 2017 hasta el presente.
12. A partir de abril de 2023, Oriental Bank se negó a aceptar sus pagos.
13. El 16 de mayo de 2023, Oriental Bank les notificó mediante carta que tenían mensualidades atrasadas.
14. El 24 de mayo de 2023, Oriental Bank les notificó un aviso de delincuencia en el que reclamó el pago de $7,335.15 por concepto de mensualidades de abril, mayo y junio de 2023.

Su contención era que, como Oriental Bank y Bancoop renunciaron a cobrar los intereses escalonados según pactado, novaron el acuerdo entre las partes y, por esa razón, incumplieron el contrato al intentar cobrar la alegada deuda por intereses no pagados y negarse a recibir las mensualidades. Por todo ello, los apelantes reclamaron que tenían una causa de acción en contra de Oriental Bank por incumplimiento de los términos del contrato de ampliación y modificación del pagaré hipotecario con daños ascendentes a al menos $200,000.00. Asimismo, le solicitaron al foro primario que declarara que la parte apelada no podía solicitar el pago de un interés superior al 4%.

El 21 de agosto de 2023, Oriental Bank y Bancoop radicaron una *Contestación a demanda* en la que negaron que procedieran las causas de acción de la *Demanda* y, en su lugar, presentaron una reconvención en la que reclamaron que el matrimonio Legrand-López incumplió las obligaciones suscritas en el referido pagaré hipotecario.[3]

---

[3] Íd., Anejo 2, págs. 9-25.

El 5 de septiembre de 2023, el matrimonio Legrand-López presentó una *Contestación a reconvención* en la que negó que hubiese incumplido y reiteró que la obligación pactada fue modificada mediante novación.[4]

El 2 de noviembre de 2023, el TPI celebró una Conferencia Inicial, cuyas incidencias fueron consignadas en una *Minuta*, transcrita y archivada digitalmente en autos ese mismo día.[5] Según surge de la *Minuta*, el foro primario manifestó que, de las alegaciones y la reconvención surgía un asunto de derecho que debía evaluarse: la interpretación de la cláusula del contrato sobre los intereses. Por esa razón, les concedió a las partes un término para expresar su posición al respecto.

El 20 de febrero de 2024, la parte apelada radicó un *Memorando en torno a clausulas sobre intereses escalonados* en la que reiteró que no hubo una novación modificativa de la Escritura Núm. 131, que el matrimonio Legrand-López estaba obligado a cumplir con las disposiciones claras de esta y que la deuda acumulada por intereses dejados de pagar era líquida, vencida y exigible.[6]

El 22 de febrero de 2024, los apelantes presentaron una *Moción en cumplimiento de orden* en la que, en síntesis, reafirmaron que hubo una novación modificativa.[7] Asimismo, plantearon que el reclamo de los alegados intereses adeudados estaba prescrito, según la *Ley de transacciones comerciales*, Ley Núm. 208 de 1995, según enmendada, 19 LPRA secs. 401 *et seq.*, (Ley Núm. 208-1995). De igual manera, agregaron que aplicaba la figura del pago en finiquito

---

[4] Íd., Anejo 3, págs. 26-29.
[5] Íd., Anejo 4, págs. 30-31.
[6] Íd., Anejo 5, págs. 32-57. Debe notarse que, según informaron Oriental Bank y Bancoop, el Anejo 5 está incompleto porque los apelantes no incluyeron todos los documentos que acompañaron el *Memorando en torno a clausulas sobre intereses escalonados*. Por tal razón, véase el *Apéndice del Alegato en oposición*, Anejo 1, págs. 1-26, o la Entrada Núm. 42 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[7] Íd., Anejo 6, págs. 58-72.

porque Oriental Bank y Bancoop aceptaron los pagos sin objeción alguna.

El 13 de marzo de 2024, Oriental Bank y Bancoop radicaron una *Réplica a moción en cumplimiento de orden* en la que expresaron que: (1) no se configuró una novación modificativa de la Escritura Núm. 131, puesto que el incremento en la tasa de interés no era opcional; (2) las cláusulas del contrato eran claras y manifestaban la voluntad de los otorgantes; (3) la deuda no estaba prescrita, sino que era líquida, vencida y exigible; y (4) no aplicaba la doctrina de pago en finiquito.[8] En específico, adujeron que no aplicaba el término prescriptivo establecido en la Sección 2-118 de la Ley Núm. 208-1995, *supra* sec. 518, y, en su lugar, debía aplicarse el de veinte (20) años establecido en el Art. 1864 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5294 (Código Civil de 1930).

El 19 de marzo de 2024, el matrimonio Legrand-López presentó una *Réplica a memorando en torno a cláusulas sobre intereses escalonados* en la que reafirmó sus argumentos anteriores.[9]

El 26 de junio de 2024, el TPI emitió una *Resolución* en la que declaró Ha Lugar el *Memorando en torno a cláusulas sobre intereses escalonados* y la *Réplica a moción en cumplimiento de orden* presentados por la parte apelada.[10] Al mismo tiempo, determinó No Ha Lugar las mociones al respecto presentadas por el matrimonio Legrand-López.

Según consignó el foro primario, tenía ante su consideración dos (2) controversias: si era aplicable una cláusula de interés escalonado y si el retraso de la parte apelada en reclamar los pagos según el contrato conllevó la novación y eliminación de las obligaciones suscritas.

---

[8] Íd., Anejo 8, págs. 74-87.
[9] Íd., Anejo 9, págs. 88-94.
[10] Íd., Anejo 14, págs. 108-123.

En respuesta a primera interrogante, resolvió que era requerido que los apelantes pagaran intereses escalonados, los cuales eran una obligación cierta establecida por la Escritura Núm. 131 que no quedó al arbitrio de Oriental Bank o Bancoop.

Respecto a la segunda, coligió que no hubo una novación modificativa de las obligaciones por la aceptación de pagos insuficientes por la parte apelada. Para el foro primario, la novación de los términos pactados requeriría que las partes tuvieran clara conciencia de ella, mientras que tampoco se adujo que existiera otro documento público que variara las cláusulas suscritas y cumpliera con el Art. 86 de la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado*, Ley Núm. 210 de 2015, según enmendada, 30 LPRA sec. 6113 (Ley Núm. 210-2015). Incluso, resaltó que la *Escritura de hipoteca Núm. 545* – mantenida vigente en lo compatible por el posterior instrumento público – prescribió que la mera aceptación de pagos parciales no equivalía a una renuncia a reclamar la cuantía correspondiente. También, rechazó que la aceptación de los pagos constituyera pago en finiquito, toda vez que no existía una reclamación ilíquida y el pago tampoco incluyó una advertencia clara y conspicua de que constituía el saldo total de la deuda mensual.

Asimismo, formuló diez (10) determinaciones de hechos que surgían de las alegaciones admitidas de la *Demanda*, la *Contestación a demanda*, la *Reconvención*, la *Contestación a reconvención* y de la documentación sometida por las partes. A saber:

1. Los Legrand-López son dueños del siguiente inmueble gravado por hipoteca:

   URBANA: Solar radicado en la Urbanización La Arborada, situada en el Barrio Cupey de Río Piedras, Puerto Rico, que se describe en le plano de inscripción de la Urbanización con el número A guion cuatro (A-4) y con un área de quinientos siete punto ochenta y seis (507.86) metros cuadrados, en lindes por el NORTE, con el lote A guion tres (A-3), en una distancia de treinta y dos punto cero catorce (32.014) metros; por el SUR, con el lote A guion cinco (A-5), en una

distancia de treinta y cinco punto ciento cincuenta y cuatro (35.154) metros; por el ESTE, con la Calle Aida, en una distancia de quince punto cero cero (15.00) metros; y por el OESTE, con Antonio Pagán, en una distancia de quince punto trescientos ochenta y siete (15.387) metros.

2. Los Legrand-López adquirieron la referida propiedad el 1 de junio de 2007 mediante la Escritura de Compraventa 544 y para ello suscribieron en igual fecha la Escritura de Hipoteca 545.

3. El 31 de mayo de 2013, los Legrand-López y BCPR otorgaron la Escritura 131 de Ampliación y Modificación de Hipoteca. En lo pertinente, acordaron lo siguiente:

--CUARTO: Las partes comparecientes han acordado ampliar y modificar y por la presente amplían y modifican la hipoteca y el pagaré hipotecario al que se ha hecho referencia en el PARRAFO TERCERO precedente de la siguiente forma:
a- El balance principal de la hipoteca y el pagaré hipotecario de CUATROCIENTOS OCHO MIL DOLARES ($408,000.000) se modifica para reflejar el balance actual de CUATROCIENTOS TREINTA Y TRES MIL SEISIENTOS DIECISEIS DOLARES Y TREINTA CENTA Y UN CENTAVOS ($433,616.31); por lo tanto, las partes comparecientes acordaron modificar la Hipoteca y el Pagaré Hipotecario para ampliar el principal en la cantidad de veinticinco mil ciento dieciséis dólares y treinta y un centavos ($25,136.31).
b- El por ciento de interés y pago mensual por concepto del principal e intereses se modifican como sigue:
   1- por treinta y seis (36) meses, comenzando el día primero (1ro) de junio de dos mil trece (2013), el interés se modifica al cuatro por ciento (4.00%) anual y el pago mensual de principal e interés se modifica a la cantidad de DOS MIL SETENTA DÓLARES Y QUINCE CENTAVOS ($2,070.15).
   2- Por los siguientes doce (12) meses, comenzando el día primero (1ro) de junio de dos mil dieciséis (2016), el interés se modifica al cinco por ciento (5.00%) anual y el pago mensual de principal e intereses se modifica a la cantidad de DOS MIL DOCIENTOS NOVENTA Y DOS DÓLARES Y SETENTA Y TRES CENTAVOS ($2,292.73).
   3- Por los siguientes doce (12) meses, comenzando el día primero (1 ro) de junio de dos mil diecisiete (2017), el interés se modifica al seis por ciento anual y el pago mensual de principal e interés se modifica a la cantidad de DOS MIL QUINIENTOS DIECINUEVE DÓLARES Y SESENTA Y SIETE CENTAVOS ($2,519.67)
   4- Durante los trecientos (300) meses, comenzando el día primero (1ro) de junio de dos mil dieciocho (2018), el interés se modifica al siete por ciento (7.00%) anual y el pago mensual de principal e interés, se modifica a la cantidad de DOS MIL SETECIENTOS CUARENTA Y NUEVE DÓLARES Y SETENTA Y CUATRO CENTAVOS ($2,749.74)

c- Se modifica el vencimiento del último pago en concepto de principal e interés a vencer el día el primero (1º) de mayo de dos mil cuarenta y tres (2043).
e- El tipo mínimo para la primera subasta en caso de ejecución es la cantidad de CUATROCIENTOS TREINTA Y TRES MIL SEISCIENTOS DIECISEIS DOLARES Y TREINTA Y UN CENTAVOS ($433,616.31).

4. A su vez, en la cláusula sexta de la Escritura 131, los Legrand-López y BCPR acordaron:
--SEXTO: A los efectos arriba consignados, quedan enmendados tanto el pagaré hipotecario como la hipoteca que lo garantiza. **Todas las demás condiciones del pagaré y de la hipoteca antes relacionada quedan en todo efecto y vigor sin cambio de naturaleza alguna.**

Manifiestan las partes comparecientes que es su intención que la modificación que se constituye mediante esta escritura NO REPRESENTE NOVACIÓN de los términos y condiciones previamente pactados.

5. A finales de 2022, Oriental les informó a los Legrand-López que debían pagar intereses adeudados de la hipoteca.

6. Por medio de una carta fechada 27 de marzo de 2023, Oriental les expresó a los Legrand-López lo siguiente:
La hipoteca de referencia originada el 1 de junio de 2007 y modificada el 31 de mayo de 2013 contiene una provisión sobre los intereses a pagar (*step rates*) a través de la vida de su préstamo. Según conversado anteriormente el interés de su préstamo debió haber cambiado de forma escalonada de 4% a 7% comenzando en el año 2016. Debido a un error en el sistema de manejo de su hipoteca dicho cambio no entró en vigor y usted ha seguido pagando una cantidad menor a la contratada. Estos pagos los consideramos como pagos parciales que no cumplen con lo que dispone la documentación de su préstamo. Al momento, usted ha dejado de pagar aproximadamente $39,000 en intereses.

7. A su vez, en la referida carta Oriental les ofreció a los Legrand-López opciones para ponerse al día en los pagos y les advirtió que no aceptarían pagos prospectivos hasta tanto se saldara la deuda de intereses.

8. Desde abril de 2023, Oriental se ha negado a aceptar el pago de hipoteca mensual remitido por los Legrand-López de $2,070.15.

9. El 24 de mayo de 2023, Oriental les notificó a los Legrand-López un aviso de delincuencia reclamando la cuantía de $7,335.15 por concepto de mensualidades de abril y mayo de 2023 y otros cargos.

10. El 31 de mayo de 2023, los Legrand-López presentaron la demanda de epígrafe.[11]

---

[11] (Énfasis nuestro). Íd., págs. 113-115.

El 6 de agosto de 2024, la parte apelada radicó una *Moción solicitando sentencia parcial de desestimación de la Demanda y se ordene referido a mediación compulsoria* en la que solicitó al TPI que emitiera una *Sentencia Parcial* acogiendo la *Resolución* del 26 de junio de 2024 por ser la ley del caso, desestimara la reclamación y refiriera la reconvención a mediación compulsoria.[12] Según adujo, el dictamen advino final y firme y se convirtió en la ley del caso luego de que el matrimonio Legrand-López no solicitara reconsideración ni presentara un recurso de *Certiorari* para cuestionarlo.

El 17 de septiembre de 2024, el matrimonio Legrand-López presentó una *Moción en oposición a solicitud de desestimación* en la que argumentó que la solicitud desestimatoria debía ser atendida bajo la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5) y debía ser denegada porque la reclamación exponía hechos que, de ser probados, justificarían la concesión de un remedio.[13]

El 9 de octubre de 2024, Oriental Bank y Bancoop radicaron una *Réplica a moción en oposición a solicitud de desestimación* en la que reiteraron que el TPI había adjudicado todas las causas de acción reclamadas en la *Demanda* y, por eso, debía desestimarla.[14] También, arguyeron que la desestimación no se basaba en la insuficiencia de las alegaciones bajo la Regla 10.2(5) de Procedimiento Civil, *supra*, sino en la ley del caso. Por último, plantearon que los apelantes pretendían que mediante su oposición el foro primario reconsiderara su dictamen previo, el cual advino final y firme.

El 3 de enero de 2025, el TPI emitió, notificó y archivó digitalmente en autos la *Sentencia parcial* apelada en la que desestimó, con perjuicio, la *Demanda* promovida por el matrimonio

---

[12] Íd., Anejo 15, págs. 124-126.
[13] Íd., Anejo 16, págs. 127-250.
[14] Íd., Anejo 18, págs. 252-264.

Legrand-López y, en su lugar, refirió a mediación la reconvención impulsada por la parte apelada.[15]

En la determinación, el TPI identificó que únicamente le correspondía resolver si, según la ley del caso y a la luz de la *Resolución* emitida el 27 de junio de 2024, procedía desestimar las causas de acción de la *Demanda* y referir la reconvención a mediación compulsoria. Examinados los planteamientos de las partes, el foro primario adoptó las determinaciones de hechos y de derecho dispuestas en la referida *Resolución*, así como los argumentos de la parte apelada respecto a la adjudicación de todas las causas de acción del matrimonio Legrand-López. Según interpretó, dicha *Resolución* advino final, firme e irrecurrible, y estableció la ley del caso entre las partes. Por eso, concluyó que en esa ocasión atendió los méritos de las dos causas de acción de la *Demanda* y que únicamente restaba dirimir la reconvención, la cual debía pasar primero por la mediación requerida.

Más específicamente, por adopción, resolvió que: (1) no hubo una novación modificativa luego de que Oriental Bank y Bancoop no cobraran el pago completo de los intereses debidos; (2) no procedía dictar sentencia declarando que la parte apelada no podía cobrar la deuda de intereses tras su inacción; (3) mediante reclamos extrajudiciales y aquellos esbozados en la reconvención, la parte apelada impidió que prescribiera su acción en contra del matrimonio Legrand-López; y (4) no se configuró la figura de pago en finiquito. Por último, rechazó considerar la solicitud de desestimación bajo la Regla 10.2(5) de Procedimiento Civil, *supra*, porque se trató de una petición que invocó la ley del caso.

En desacuerdo, el 3 de febrero de 2025, el matrimonio Legrand-López presentó ante esta Curia el *Recurso de apelación* de

---

[15] Íd., Anejo 19, págs. 265-273.

epígrafe y le imputó al TPI la comisión de los siguientes dos (2) errores:

> COMETI[Ó] ERROR EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE NO OCURRI[Ó] UNA NOVACI[Ó]N MODIFICATIVA ENTRE LAS PARTES.
>
> COMETI[Ó] ERROR EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A APLICAR LAS REGLAS DE HERMEN[É]UTICA PARA EFECTOS DE LA INTERPRETACI[Ó]N DEL CONTRATO QUE REGULA LA RELACI[Ó]N ENTRE LAS PARTES.

Es su contención reiterada, que el cobro por Oriental Bank y Bancoop de los alegados pagos insuficientes constituyó una novación modificativa de los términos pactados por las partes en la *Escritura sobre ampliación y modificación de hipoteca Núm. 131*. De esa forma, plantea que no procedía que se les impusiera pago alguno de los intereses dejados de devengar por la parte apelada.

Asimismo, rechaza que se utilice el lenguaje de la propia escritura en tanto prohibió que se interpretara como una novación de la *Escritura de hipoteca Núm. 545*. Al respecto, arguye que la conducta por sí sola es demostrativa de la novación del acuerdo. De manera similar, descarta el lenguaje de dicha compraventa en el que se establece que la mera aceptación de pagos parciales no significaba la renuncia del banco a reclamar sus derechos bajo la hipoteca. Sobre esto, argumenta que ello no implica que las partes no pudieran haber modificado lo acordado mediante su conducta implícita.

En apoyo del dictamen apelado, el 5 de marzo de 2025, Oriental Bank y Bancoop radicaron un *Alegato en oposición* en el que solicitaron que confirmemos al foro primario. Su posición es que esta Curia no tiene jurisdicción para atender los méritos de los errores planteados por el matrimonio Legrand-López. A esos efectos, denuncia que los apelantes pretenden cuestionar los fundamentos de la *Resolución* del 27 de junio de 2024, la cual no fue objeto de reconsideración ni revisión mediante *certiorari*. Por ello, plantea que

únicamente corresponde que resolvamos si el TPI aplicó correctamente la ley del caso, lo cual, a su entender, hizo.

Plasmado el trámite procesal del caso, en adelante, pormenorizamos el derecho aplicable a la controversia que presenta el recurso.

**III.**

**A.**

La doctrina de la ley del caso es una manifestación del principio de que las adjudicaciones deben tener fin. *Rosso Descartes v. BGF,* 187 DPR 184, 192 (2012). Su propósito es velar por el trámite ordenado y pronto de los litigios, así como promover la estabilidad y certeza del derecho. Íd., pág. 193. De esta forma, las partes pueden conducirse en el pleito sobre directrices judiciales confiables y certeras. *Núñez Borges v. Pauneto Rivera,* 130 DPR 749, 754 (1992).

En virtud de esta doctrina, es la norma que los planteamientos que han sido adjudicados en el ámbito judicial, a través de un dictamen firme, constituyen la ley del caso y, por eso, sus determinaciones y asuntos decididos obligan tanto al tribunal inferior, como al que las dictó, impidiendo que puedan ser reexaminados. *Rosso Descartes v. BGF,* supra; *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 606-607 (2000).

Ahora bien, la doctrina de la ley del caso no representa un mandato invariable o inflexible, recoge una costumbre: que se respeten como finales las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa. *Núñez Borges v. Pauneto Rivera,* supra. De la mano con esto, esta doctrina representa una sana práctica judicial, no una regla inviolable. *Torres Cruz v. Municipio de San Juan*, 103 DPR 217, 222 (1975); *Don Quixote Hotel v. Tribunal Superior*, 100 DPR 19, 30 (1971). Así, si un tribunal entiende que la ley del caso antes establecida es

errónea y puede causar una grave injusticia, puede aplicar una norma de derecho distinta, en aras de resolver justamente. ***Don Quixote Hotel v. Tribunal Superior***, supra. Empero, una determinación emitida por un tribunal previamente no debe alterarse, **a menos que** surja del expediente una variación de hechos del caso o un estado de derecho particular. ***Rosso Descartes v. BGF,*** supra, pág. 192-193; ***Mgmt. Adm. Servs. Corp. v. E.L.A.,*** supra, pág. 607. Cónsono con esto último, la doctrina de la ley del caso no es férrea, ni de aplicación absoluta, si conduce a resultados manifiestamente injustos. ***Mgmt. Adm. Servs. Corp. v. E.L.A.,*** supra, pág. 608, (citando a ***Noriega v. Gobernador***, 130 DPR 919, 931 (1992)).

## B.

Las obligaciones se extinguen: (a) mediante el pago o cumplimiento; (b) por la pérdida de la cosa debida; (c) por la condonación de la deuda; (d) por la confusión de los derechos de acreedor y deudor; (e) por la compensación; y (f) por la **novación**. Art. 1110 del Código Civil ant. 31 LPRA sec. 3151. El citado artículo reconoce la novación como una de las formas de extinción de las obligaciones. La novación se define como "la sustitución o cambio de una obligación por otra posterior, **que modifica o extingue la primera**, ya variando su objeto o condiciones principales, o bien sustituyendo la persona del deudor, o subrogando a un tercero en los derechos del acreedor". José M. Manresa y Navarro, *Comentarios al Código Civil Español*, VIII-I, págs. 855–856 (6ta ed., Reus 1967). Es decir, que "[e]s 'un acto jurídico de doble función que, a la vez que *extingue, hace nacer* en lugar de ella otra obligación nueva'." ***Mun. San Juan v. Prof. Research,*** 171 DPR 219, 243-244 (2007). "[E]l deslinde entre la novación modificativa y la extintiva debe realizarse tomando en consideración la voluntad de las partes y la significación económica de la modificación". Íd.

Como dicta la doctrina, la novación puede tener carácter modificativo o extintivo. Íd. La novación puede ser modificativa cuando queda subsistente una obligación. En otras palabras, se concreta cuando no existe la intención de extinguir una obligación previamente establecida y sustituirla por otra o cuando existe compatibilidad entre la obligación original y la nueva. ***P.D.C.M. Assoc. v. Najul Bez,*** 174 DPR 716, 725 (2008). Como destaca el Tribunal Supremo "[a] diferencia de lo que sucede en la novación extintiva, en la modificativa sí se mantiene el régimen normativo que regía la obligación original, sólo que ahora la obligación ha sido renovada". ***United v. Villa****, 161 DPR 609, 619 (2004); **Constructora Bauzá v. García López,*** 129 DPR 579, 599 (1999). Además, el cambio puede darse sobre ciertos elementos que no extinguen la obligación original. Margarita García Cárdenas, <u>*La novación, los 'workouts' y las garantías*</u>, 47 Rev. Jur. UIPR, págs. 433-434 (2013). Aquí, las obligaciones accesorias subsisten, a pesar de que se modifiquen algunos elementos de la obligación principal. José Puig Brutau, <u>*Fundamentos del Derecho Civil,*</u> Tomo I, vol. II, pág. 94 (4ta ed. Bosch 1988).

En el caso de la novación modificativa, esta se rige por las reglas de interpretación y exteriorización de la voluntad, sin que se requiera particularmente el *animus novandi*, el elemento esencial de la novación extintiva. ***P.D.C.M. Assoc. v. Najul Bez,*** supra, págs. 725-726 (citas omitidas). No obstante, la modificación de la obligación no queda al arbitrio de una de las partes. Íd., pág. 726. Es decir, que no haya *animus novandi* no implica que se permita la modificación unilateral de una obligación. Íd. Por eso, nuestro más alto foro ha preceptuado que, aunque la novación modificativa no exige la voluntad expresa de extinguir una obligación por otra, <u>es imprescindible encontrar un ánimo de cambio</u>. Íd. En fin, debe

considerarse un asunto de intención a ser inferida según las circunstancias de cada caso y la voluntad de las partes.

**IV.**

En esta ocasión tenemos la oportunidad de evaluar si procede confirmar una *Sentencia parcial* en la que el TPI desestimó una *Demanda* sobre incumplimiento de contrato y sentencia declaratoria cuando en una *Resolución* previa que no fue objeto de reconsideración ni revisión mediante *certiorari* declaró No Ha Lugar las causas de acción de la reclamación.

En su recurso, el matrimonio Legrand-López no atendió esa controversia. En su lugar, únicamente dedicó su escrito a reiterar su teoría sobre la novación modificativa vía conducta implícita de los acuerdos suscritos previamente en instrumentos públicos que requieren inscripción en el Registro de la Propiedad para ser válidos.

En defensa del dictamen apelado, Oriental Bank y Bancoop plantea que esta Curia no tiene jurisdicción para atender los errores señalados por los apelantes. En vez, arguyen que únicamente nos corresponde determinar que el TPI aplicó cabalmente la ley del caso, según resolvió en la *Resolución* del 27 de junio de 2024.

Tras un análisis objetivo, sereno y cuidadoso del expediente, así como de los argumentos de las partes, resolvemos que el TPI no incidió en los errores señalados. Por el contrario, aplicó correctamente el derecho al concluir que, en virtud de la *Resolución* emitida el 27 de junio de 2024, había atendido los méritos de las dos causas de acción en las que se basó la *Demanda* al fallar a favor de Oriental Bank y Bancoop en el asunto de la interpretación de las cláusulas de intereses escalonados, pactadas junto al matrimonio Legrand-López. Dicha aplicación del derecho a los hechos del caso resulta acertada. Las adjudicaciones, sean interlocutorias o finales, parciales o totales, han de gozar de finalidad, orden, estabilidad, certeza y confiabilidad. No estamos ante una potencial injusticia que

motive variar las determinaciones de hecho y derecho a las que llegó el foro primario en una *Resolución* que no fue objeto de reconsideración, ni revisión ante esta Curia. Del expediente tampoco surge una variación de los hechos del caso o un estado de derecho particular que permita alterar el dictamen. Mucho menos ante la improcedencia en derecho de la teoría de los apelantes sobre la novación modificativa mediante conducta implícita, dirigida únicamente a los méritos de la *Resolución* advenida final y firme.

Adviértase que estamos ante unas obligaciones claras, pactadas en instrumentos públicos, que han tenido acceso al Registro de la Propiedad, pues dependen de su inscripción para ser válidas. Para modificarlas, no basta con que la parte apelada no haya cobrado la totalidad de lo que correspondía según los acuerdos. Mucho menos cuando las partes acordaron en la *Escritura de hipoteca Núm. 545* que la aceptación de pagos parciales no implica una renuncia a los derechos de los acreedores bajo el acuerdo. Menos todavía cuando las partes pactaron en la *Escritura de ampliación y modificación de hipoteca Núm. 131* que la modificación, en ese entonces, no representaría una novación de los términos previamente acordados. De las circunstancias particulares de este caso, la voluntad de las partes y las acciones de cada una no surge un ánimo de cambio ni ningún otro indicio de renuncia que justifique interpretar que las partes modificaron los derechos claramente establecidos en acuerdos previos.

Incluso, cabe recordar que tampoco se favorece interpretar la modificación unilateral de una obligación. Oriental Bank y Bancoop aceptaron pagos incompletos por inadvertencia. El matrimonio Legrand-López los realizó insuficientemente por presunta inadvertencia también, a pesar de que se obligaron al aumento escalonado de los intereses. Ninguna de esas acciones podría considerarse una modificación de los acuerdos previos.

A la luz de lo esbozado, corresponde que confirmemos la *Sentencia parcial* apelada y que el caso continúe su curso en cuanto a la reconvención promovida por Oriental Bank y Bancoop.

**V.**

Por los fundamentos pormenorizados, se *confirma* la *Sentencia parcial* apelada. Se devuelve el caso al foro recurrido para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.  El Juez Sánchez Ramos disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JAMPIERRE LEGRAND LÓPEZ, ELVIRA ORTIZ Y OTROS<br><br>Apelantes<br><br>V<br><br>BANCO COOPERATIVO DE PUERTO RICO, ORIENTAL BANK<br><br>Apelados | KLAN202500076 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2023CV05270<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores

**VOTO DISIDENTE DEL JUEZ SÁNCHEZ RAMOS**

Contrario a lo concluido por el Tribunal de Primera Instancia ("TPI"), no puedo considerar jurídicamente inconsecuente el hecho de que la institución bancaria pertinente (el "Banco") se mantuvo cobrando, **por casi siete años**, una cuantía menor a la que tenía derecho a cobrar bajo los términos contractuales correspondientes.

Es contrario a la buena fe, y un abuso del derecho, pretender cobrar los intereses adicionales acumulados durante este prolongado periodo de tiempo, durante el cual el Banco se cruzó de brazos y omitió exigir el pago de los mismos. Por tal razón, el TPI debió declarar que, mientras el Banco optó por no cobrar dichos intereses adicionales, la parte demandante quedó liberada de pagarlos.

Adviértase que una parte contratante está obligada, no tan solo por lo "expresamente pactado", sino a "todas las consecuencias que según [la] naturaleza [del contrato] sean conformes a la buena fe, al uso y a la ley". Artículo 1210 del Código Civil, 31 LPRA

sec. 3375[16]; *Ramírez v. Club Cala de Palmas*, 123 DPR 339 (1989); *Velilla v. Pueblo Supermarkets, Inc.*, 111 DPR 585, 587-88 (1981). El comportamiento conforme a la buena fe es precepto general que abarca toda actividad jurídica y se extiende a la totalidad del ordenamiento jurídico. *Velilla, supra.*

Por ello, cada una de las partes se debe a "todo aquello que en cada situación impone la buena fe". M. Godreau, *Análisis del término del Tribunal Supremo en materia de Derecho Civil Patrimonial 1994-1995*, 65 Rev. Jur. U.P.R, 773, 793 (1996) (citando a Díez-Picazo en su prólogo a la obra de Wieacker, El principio general de la buena fe); M. Godreau, *Lealtad y Buena fe Contractual*, 48 Rev. Jur. UPR 367, 400-401 (1989); véanse, además, *S.L.G. Ortiz-Alvarado v. Great American*, 182 DPR 48 (2011); *Prods. Tommy Muñiz v. COPAN*, 113 DPR 517, 528 (1982); *González v. The Commonwealth Ins. Co.*, 140 DPR 673, 683 (1996). Al respecto, el profesor Godreau ha expuesto que:

> Por más claro que pueda redactarse un texto contractual, si en el mismo se recogen prestaciones que violentan las expectativas razonables de la otra parte, es de esperar que cualquier juzgador con un claro sentido ético le reste eficacia a la literalidad de la redacción, máxime si del mismo se derivan consecuencias injustas.

M. Godreau, *Análisis del término del Tribunal Supremo en materia de Derecho Civil Patrimonial 1994-1995*, 65 Rev. Jur. U.P.R, 773, 792-793 (1996).

Así pues, los derechos deben ejercitarse de conformidad con lo que exija la buena fe en una situación particular. *Soriano Tavárez v. Rivera Anaya*, 108 DPR 663, 670 (1979). **La ley no ampara el abuso del derecho o su ejercicio antisocial**. *Íd.* El ejercicio de todo derecho debe ser **razonable**. *Soriano Tavárez*, 108 DPR a las págs. 670-671; véase, además, J. Roca, Art. 7.2 en *Comentarios a*

---

[16] Vigente al momento de los hechos. En todo caso, véase Artículo 1062 del Código civil de 2020, 31 LPRA sec. 8983.

*las Reformas del Código Civil: El Nuevo Título Preliminar y la Ley de 2 de mayo de 1975*, V. I, Madrid, Ed. Tecnos, pág. 375.

En este caso, del récord surge claramente que el Banco no actuó de buena fe cuando, luego de abstenerse, por casi siete años, de ejercitar el derecho que tenía de cobrar los intereses adicionales pactados, insistió en el cobro de los mismos. La omisión del Banco ha tenido la consecuencia de aumentar significativamente la cuantía debida, a raíz de los intereses y otros cargos que se acumulan con el pasar del tiempo, además de provocar que la parte demandante obviara la búsqueda oportuna de alternativas para refinanciar la deuda bajo términos más favorables.

No era, ni es, suficiente que el Banco simplemente asevere que tiene derecho a cobrar los intereses que por casi siete años se abstuvo de cobrar. La doctrina reseñada, sobre buena fe en el cumplimiento de un contrato, y sobre abuso del derecho, requiere que existiese alguna razón legítima para este comportamiento. No obstante, en este caso, el Banco ni siquiera ha intentado plantear que tal razón exista, por lo que dicha parte actuó de mala fe y en abuso de sus derechos.

Por los fundamentos anteriormente expuestos, disiento.

En San Juan, Puerto Rico, a 24 de marzo de 2025.


ROBERTO SÁNCHEZ RAMOS
Juez de Apelaciones